THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

[Cite as State *v.* Davis (1988), 38 Ohio St. 3d 361.]

(No. 86-1171—Submitted March 2, 1988—Decided September 14, 1988.)

*John F. Holcomb,* prosecuting attorney, *Daniel G. Eichel* and *Michael J. Sage,* for appellee.

*Holbrock & Jonson Law Firm* and *Timothy R. Evans,* for appellant.

LOCHER, J. This court is confronted today by issues concerning the conviction and death sentence of appellant. For the reasons set forth below, we affirm the judgment of the court of appeals with regard to appellant's conviction, but reverse the judgment of the court of appeals as to appellant's death sentence.

## I

We begin our analysis by considering appellant's propositions of law which challenge the validity of his conviction for aggravated murder.

As noted above, appellant was charged with aggravated murder with the specification that prior to the instant offense, appellant was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another. Appellant was further charged in the second count with having weapons while under a disability. Appellant maintains that the trial court erred in refusing to sever the two charges contained in the indictment. It is also appellant's contention that the refusal to sever the two charges deprived him of his right to a jury trial because such a decision "forced" him to choose a hearing by a three-judge panel.

R.C. 2929.022(A) provides:

"If an indictment or count in an indictment charging a defendant with aggravated murder contains a specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code, the defendant may elect to have the panel of three judges, if he waives trial by jury, or the trial judge, if he is tried by jury, determine the existence of that aggravating circumstance at the sentencing hearing held pursuant to divisions (C) and (D) of section 2929.03 of the Revised Code."

Prior to trial, appellant elected to have the trial judge determine the existence of the aggravating circumstance set forth in the specification pursuant to R.C. 2929.022(A). At the same time, appellant reiterated his earlier motion to sever the counts of the indictment. Following the trial court's decision to deny the motion to sever, appellant waived his right to a jury trial and elected to have a three-judge panel hear his case. Appellant claims that he was forced to waive the jury trial because, as a result of the denial of the motion to sever, a jury would be informed of his prior commission of a homicide throughout the trial.[6] Thus, appellant concluded that the jury's knowledge of such evidence

---

[6] One of the elements of proving the offense of having a weapon while under a disability is that the defendant has been convicted of a felony of violence. See R.C. 2923.13(A)(2).

would be extremely damaging and prejudicial.

Crim. R. 8(A) permits joinder of separate offenses only where the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Clearly, the evidence of record in this action reveals that the crimes charged in the indictment arose from the same act or transaction.

"A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden, of affirmatively showing that his rights were prejudiced." *State* v. *Torres* (1981), 66 Ohio St. 2d 340, 343, 20 O.O. 3d 313, 315, 421 N.E. 2d 1288, 1290; *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 175, 16 O.O. 3d 201, 204, 405 N.E. 2d 247, 251-252. See, also, *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 127, 19 OBR 330, 334, 483 N.E. 2d 1157, 1162, certiorari denied (1986), 474 U.S. 1073. Appellant essentially argues that the trial court's refusal to sever the charges abridged his right under R.C. 2929.022(A) to elect to have evidence of the prior purposeful killing considered solely at a sentencing hearing. Ohio's statutory framework for imposition of capital punishment directs that aggravating circumstances be determined at the guilt phase. Evidence pertaining to prior purposeful killings, not otherwise admissible, is admissible at the trial to prove the aggravating circumstance contained in R.C. 2929.04(A)(5). Nevertheless, when an R.C. 2929.022

(A) election is made, evidence concerning a prior purposeful killing, not otherwise admissible, may not be introduced at the guilt phase to prove an aggravating circumstance. However, it is not the purpose of R.C. 2929.022(A) to provide a defendant with a blanket statutory right to preclude, at the guilt phase, the introduction of all evidence pertaining to prior purposeful killings which is otherwise admissible, *i.e.,* the evidence necessary to prove the offense of having a weapon while under a disability.

Appellant's further contention that he was "forced" into waiving his right to a jury trial because of the *possibility* that the jury would not follow a curative instruction raises a mere risk of prejudice that can be best described as speculative. This does not meet the requirement of affirmatively showing prejudice.[7] A jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated. *Torres, supra,* at 343, 20 O.O. 3d at 315, 421 N.E. 2d at 1291. See, also, *Spencer* v. *Texas* (1967), 385 U.S. 554, 562.

Finally, a review of the record reveals no actual prejudice to the rights of appellant. The three-judge panel considered the evidence on each charge fairly and carefully. Moreover, the evidence of guilt is so overwhelming that it may be concluded beyond a reasonable doubt that any introduction of the prior convictions did not contribute to the finding of guilt. Therefore, this proposition of law is overruled.

In the next proposition of law challenging his conviction, appellant con-

---

[7] "The mere possibility that the defendant might have a better choice of trial tactics if the counts are separated, or the mere possibility that he might desire to testify on one count and not the other, is insubstantial and speculative; it is not sufficient to show prejudice." (Citation omitted.) *Torres, supra,* at 344, 20 O.O. 3d at 315, 421 N.E. 2d at 1291.

tends that the trial court erred in failing to allow him to inspect the grand jury transcript. Appellant filed a motion asking the trial court to dismiss the indictment and to allow him to inspect the grand jury transcript on the basis that the indictment against him was not based on probable cause and that it was founded on illegal and. incompetent evidence.

In *State* v. *Greer* (1981), 66 Ohio St. 2d 139, 20 O.O. 3d 157, 420 N.E. 2d 982, this court held in paragraph two of the syllabus that: "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." A "particularized need" has been described as: "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial * * *." *State* v. *Sellards* (1985), 17 Ohio St. 3d 169, 173, 17 OBR 410, 413, 478 N.E. 2d 781, 785. Moreover, "the release of any such testimony for use prior to or during trial is within the discretion of the trial court." *Greer, supra,* at paragraph one of the syllabus.

As recognized above, appellant's motion to dismiss the indictment was premised on the argument that the in- dictment was not based on probable cause and was founded on illegal and incompetent evidence. The United States Supreme Court has held that: "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence

* * *." *United States* v. *Calandra* (1974), 414 U.S. 338, 344-345.

The record in the cause *sub judice* reveals no abuse of discretion on the part of the trial court in its denial of appellant's request to review the grand jury testimony. Furthermore, it is evident that by attacking the indictment on the basis that the grand jury acted upon inadequate or incompetent evidence, appellant has failed to demonstrate a particularized need to inspect the grand jury testimony. Nothing in the record indicates that appellant failed to receive a fair trial because he was not provided with the grand jury testimony. This proposition of law is without merit.

Finally, appellant questions the credibility of the witnesses testifying against him and contends that the state failed to prove "prior calculation and design" as required for the aggravated murder conviction. Essentially, appellant is arguing that his conviction was against the manifest weight of the evidence. We disagree.

"The standard for our review is whether, after viewing the evidence in a light most favorable to the prosecution, a reasonable jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson* v. *Virginia* (1979), 443 U.S. 307. Further, we must bear in mind that the weight given to evidence and judgment of the credibility of witnesses are in the province of the * * * [trier of fact]. A reviewing court may not reverse a judgment of conviction where the record shows a verdict based on sufficient evidence. * * *" *State* v. *Martin* (1986), 21 Ohio St. 3d 91, 95, 21 OBR 386, 389, 488 N.E. 2d 166, 169, affirmed (1987), 480 U.S. 228.

In *State* v. *Cotton* (1978), 56 Ohio St. 2d 8, 10 O.O. 3d 4, 381 N.E. 2d 190,

we held in paragraphs two and three of the syllabus that:

"Instantaneous deliberation is not sufficient to constitute 'prior calculation and design.'

"Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

See, also, State v. Robbins (1979), 58 Ohio St. 2d 74, 77-79, 12 O.O. 3d 84, 86-87, 388 N.E. 2d 755, 757-758, and at paragraph one of the syllabus. We find that there was ample evidence produced at trial to support the decision of the three-judge panel.

While appellant's precise state of mind during the evening hours of December 12, 1983, was not established, other evidence presented at trial overwhelmingly supports the conclusion that appellant murdered Butler according to a plan and with prior calculation and design. The record indicates that the shooting was not the result of an instantaneous eruption of events. None of the witnesses testified at trial as to any verbal or physical confrontation between appellant and Butler either inside or outside the Legion. Denmark and Massey testified that they saw a man and woman talking in front of the Legion. Aldridge testified that appellant and Butler were not arguing inside the bar when they made the decision to go outside. Nothing in the record reveals any set of facts that this may have been an instantaneous "heat of passion" type of incident. The record reveals that appellant and Butler had recently been involved in a relationship. The couple had cohabited, but had separated shortly before the murder. On the afternoon of the shooting, appellant used others to purchase a gun and ammunition for him. The gun was loaded in the presence of both Lovette and Coleman and was slipped under the driver's seat of appellant's car. A few hours later, Butler was shot four times in the left side of the head at close range. The final shot was fired in execution style after Butler was lying on the pavement. Although the weapon was never found, the shells matched the type purchased that afternoon by Lovette at appellant's request. Based on this evidence, the three-judge panel found appellant guilty of aggravated murder.

Accordingly, we conclude that there is sufficient evidence in the record to support the conviction. Consequently, appellant's contention is not well-taken.

This concludes our review of appellant's challenges to the validity of his conviction for aggravated murder. Having found appellant's contentions to be meritless, we hereby affirm his conviction.

II

Appellant presents numerous arguments challenging the constitutionality of Ohio's death penalty statute in his sixth proposition of law. We have previously rejected these arguments in State v. Jenkins (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, certiorari denied (1985), 472 U.S. 1032; State v. Maurer (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768; State v. Buell (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795, certiorari denied (1986), 479 U.S. 871; State v. Williams (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906, certiorari denied (1987), 480 U.S. ___, 94 L. Ed. 2d 699, 107 S. Ct. 1385; State v. Brooks (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407, cer-

tiorari denied (1987), 480 U.S. ___, 94 L. Ed. 2d 182, 107 S. Ct. 1330; *State v. Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 479 N.E. 2d 55, certiorari denied (1987), 480 U.S. ___, 94 L. Ed. 2d 699, 107 S. Ct. 1386; *State v. Glenn* (1986), 28 Ohio St. 3d 451, 28 OBR 501, 504 N.E. 2d 701, certiorari denied (1987), 482 U.S. ___, 96 L. Ed. 2d 705, 107 S. Ct. 3219; *State v. Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383; *State v. Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585; *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598; *State v. Morales* (1987), 32 Ohio St. 3d 252, 513 N.E. 2d 267; and *State v. Post* (1987), 32 Ohio St. 3d 380, 513 N.E. 2d 754.

### III

We must now address those propositions of law offered by appellant in consideration of the validity of his death sentence. For the reasons to follow, we reverse the judgment of the court of appeals and remand this cause to the trial court for resentencing.

Appellant contends that the three-judge panel improperly weighed non-statutory aggravating circumstances against the mitigating factors in sentencing him to death and that this error requires him to be resentenced. After reviewing the trial court's opinion in this case, we agree.

R.C. 2929.03(D)(3) provides in pertinent part:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, *or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. * * *"* (Emphasis added.)

R.C. 2929.03(F) provides in relevant part:

"The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. * * *"

At the conclusion of the sentencing phase in the instant action, the three-judge panel made the following specific findings pursuant to R.C. 2929.03(F):

"This panel of three (3) judges has imposed the death penalty and makes the following findings as to the existence of mitigating factors and aggravated [*sic*] circumstances.

"We find the following to be mitigating factors:

"1) The Defendant adjusted well to prison routine and during his stay in prison, obtained a high school GED and an associate degree in Business Administration, and studied for and worked as a dental technician.

"2) There has always been a good family relationship between the Defendant and all members of his family, including his stepfather.

"3) Since his release on parole, he has maintained at least partial employment.

"4) As testified by the psychologist, Defendant has a compulsory personality disorder or explosive disorder

which may have contributed to the violence in this case.

. "We find the following aggravated [sic] circumstances have been proven beyond a reasonable doubt:

"1) The manner by which the Defendant purchased the gun, used to kill the victim in this case.

"2) The manner by which the Defendant purchased the ammunition for the gun.

"3) The shooting of the victim, the firing at close range and finally placing the gun almost against her skull and discharging the weapon.

"4) The prior purposeful killing of his wife in 1970 by multiple stab wounds.

"5) Committing the present offense while on parole for the murder of his wife.

"After considering the mitigating factors and the aggravating circumstances proved beyond a reasonable doubt, we unanimously find by proof beyond a reasonable doubt that the aggravating circumstances the Defendant was found guilty of, outweigh the mitigating factors found by this panel.

"The killing of the victim in this case was planned, calculated and designed by the Defendant and carried out in an execution fashion. Further, he had previously been convicted of second degree Murder for the purposeful killing of his wife. These make it impossible for this panel to arrive at any other conclusion than that the aggravated [sic] circumstances, proven beyond a reasonable doubt, outweigh the mitigating factors.

"We, therefore, sentence the Defendant to death by electrocution on October 1, 1984."

R.C. 2929.04(A) specifically enumerates the aggravating circumstances which may be considered in imposing the death penalty.[8] Of those cir-

---

[8] R.C. 2929.04(A) provides:

"Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

"(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. For purposes of this division, a person is a candidate if he has been nominated for election according to law, or if he has filed a petition or petitions according to law to have his name placed on the ballot in a primary or general election, or if he campaigns as a write-in candidate in a primary or general election.

"(2) The offense was committed for hire. ·

"(3) The offense was committed for the purpose of escaping detection, apprehension, trial or punishment for another offense committed by the offender.

"(4) The offense was committed while the offender was a prisoner in a detention facility as defined in section 2921.01 of the Revised Code.

"(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

"(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code, whom the offender had reasonable cause to know or knew to be such, and either the victim, at the time of the commission of the offense, was engaged in his duties, or it was the offender's specific purpose to kill a peace officer.

"(7) The offense was committed while the offender was committing, attempting to

cumstances enumerated in the statute, only the aggravating circumstance described in R.C. 2929.04(A)(5) is present in the trial court's opinion. Item four finds the "prior purposeful killing of his wife in 1970"[9] to be an aggravating circumstance. However, the balance of the five circumstances listed by the three-judge panel was outside the statute. The trial court weighed these five circumstances against the four mitigating factors it found to be present. "This weighing process is designed to guide the sentencing authority's discretion by focusing on the 'circumstances of the capital offense and the individual offender * * *,' thus reducing the arbitrary and capricious imposition of death sentences. * * * [Citation omitted.] Like all penalty pro-

visions, R.C. 2929.04(B) must '* * * be strictly construed against the state, and liberally construed in favor of the accused.' R.C. 2901.04(A)." *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 371, 513 N.E. 2d 744, 746-747.

The state contends that consideration of nonstatutory aggravating circumstances does not constitute reversible error. It cites *Zant* v. *Stephens* (1983), 462 U.S. 862, and *Barclay* v. *Florida* (1983), 463 U.S. 939, in support of its position.[10]

In each case, the sentencing court considered an improper aggravating circumstance which the state's highest courts held did not require vacation of the death penalty. The United States Supreme Court held that the improper consideration of an aggravating cir-

---

commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

"(8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent his testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness, or the victim of the aggravated murder was a witness to an offense and was purposely killed in retaliation for his testimony in any criminal proceeding."

Moreover, our decision in *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 24 OBR 282, 494 N.E. 2d 1061, holds in the syllabus that:

"R.C. 2941.14(B) limits the aggravating circumstances which may be considered in imposing the death penalty to those

specifically enumerated in R.C. 2929.04 (A)."

[9] Appellant argues that this prior homicide was too remote in time to be considered as an aggravating circumstance. We do not agree. The prior conviction was offered to demonstrate that appellant had, in fact, been convicted of an offense an essential element of which was the purposeful killing of another pursuant to R.C. 2929.04(A)(5). The General Assembly has placed no time limits on the use of the prior conviction and it is not required to do so. Furthermore, we affirmed the death sentence in *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140, certiorari denied (1986), 476 U.S. 1178, which involved the aggravating circumstance of an eleven-year-old prior conviction.

[10] The state also cites *State* v. *Jenkins, supra.* In *Jenkins,* we discussed overlapping or duplicative statutory aggravating circumstances and the effect on the weighing process. *Id.* at 194-200, 15 OBR at 337-342, 473 N.E. 2d at 292-297. We do not find such discussion to be on point with the case at bar which involves the improper weighing of nonstatutory aggravating circumstances. See *Penix, supra,* at 371-372, 513 N.E. 2d at 747.

cumstance by the sentencer did not necessarily invalidate the imposition of a sentence of death. The court also held that review of such a defect required an inquiry into "* * * the function of the finding of aggravating circumstances under * * * [state] law and * * * the reason why this aggravating circumstance is invalid." *Barclay, supra,* at 951; *Zant, supra,* at 884.[11]

Florida's statutory framework for imposition of capital punishment is similar to Ohio's. *State* v. *Jenkins, supra,* at 207, 15 OBR at 348, 473 N.E. 2d at 302. Both states require the sentencing authority to weigh the aggravating circumstances and the mitigating factors. In *Barclay,* the trial court considered the criminal record of the defendant as an aggravating circumstance although it was not defined as such by the Florida statute. In upholding the imposition of the death penalty despite the consideration of the nonstatutory aggravating circumstance, the Supreme Court was persuaded by the fact that the evidence of the defendant's record was otherwise admissible, and that in reviewing similar errors, the Florida Supreme Court did not mechanically apply a harmless error analysis. *Id.* at 956-958. However, it is significant to note that in *Barclay,* unlike the case at bar, the trial court did *not* find any mitigating factors to be present.

In Florida, when trial courts erroneously consider improper aggravating factors and also find some mitigating factors to exist, the case will generally be remanded for resentencing. If the trial court properly finds that there are no mitigating factors, the Florida Supreme Court generally applies a harmless error analysis. *Elledge* v. *State* (1977), 346 So. 2d 998, 1002-1003; *Barclay, supra,* at 954-955. See, also, *Hill* v. *State* (1987), 515 So. 2d 176.

In *Elledge,* the Florida Supreme Court reasoned: "It appears that the United States Supreme Court does not fault a death sentence predicated in part upon nonstatutory aggravating factors *where there are no mitigating circumstances.* The absence of mitigating circumstances becomes important, because, so long as there are *some* statutory aggravating circumstances, there is no danger that nonstatutory circumstances have served to overcome the mitigating circumstances in the weighing process which is dictated by our statute. * * * *State* v. *Dixon,* 283 So. 2d 1 (Fla. 1973), teaches that:

" '* * * [T]he procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present. * * *' 283 So. 2d at 10.

"If this be so, then regardless of the existence of other authorized aggravating factors we must guard against any unauthorized aggravating factor going into the equation which

---

[11] While *Zant* does have some relevance to the instant action, we do not find it to be controlling in this case. The Georgia statute at issue in *Zant,* like R.C. 2929.04(A), requires the sentencer to find at least one valid statutory aggravating circumstance before the death penalty may be considered. However, unlike the Georgia statute, Ohio law requires the sentencer to balance statutory aggravating circumstances against all mitigating factors. Since consideration of the weighing process is crucial to the determination in the case at bar, we do not find the *Zant* holding determinative.

might tip the scales of the weighing process in favor of death." (Emphasis added.) *Id.* at 1002-1003. We find the reasoning of the *Elledge* court to be particularly persuasive in our determination of the instant action.

The state further maintains that the trial court was considering the nature and circumstances of the offense as it was required to do pursuant to R.C. 2929.04(B). However, a thorough review of the trial court's opinion does not dictate a finding that the trial court was merely relying on the nature and circumstances of the crime as a reason why the aggravating circumstances outweighed the mitigating factors. In *State* v. *Steffen, supra*; *State* v. *Stumpf, supra*; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 512 N.E. 2d 611; and *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 512 N.E. 2d 962, we held that a trial court's consideration of the nature and circumstances of the offense was not improper. In *Steffen,* we found that R.C. 2929.04(B) required a trial court to " 'consider, and weigh *against the aggravating circumstances* proved beyond a reasonable doubt, the nature and circumstances of the offense * * *.' " (Emphasis added in part and deleted in part.) *Id.* at 117, 31 OBR at 278, 509 N.E. 2d at 390. "The statute merely requires that the court consider this factor *in determining the mitigating factors* to be weighed against the proven aggravating circumstances. Obviously, the nature and circumstances of certain offenses will be such that no mitigating feature can be extracted." (Emphasis added.) *Id.* In *Stumpf,* we held in paragraph one of the syllabus that: "Under R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating

factors." In *Byrd,* we cited *Steffen* and then stated: "The trial court in this case also found that there were no mitigating factors in the nature and circumstances of the murder and robbery * * *. To reach this conclusion, the court was required to review the nature and circumstances of the offense. *We do not agree with the defendant's contention that by conducting this required review the court was actually weighing these circumstances against the mitigating factors."* (Emphasis added.) *Id.* at 81, 512 N.E. 2d at 615.

In *Steffen, Stumpf* and *Byrd,* the trial courts did not list the nature and circumstances of the offense in their opinions as aggravating circumstances as did the trial court in the instant case. Furthermore, there was no indication in *Steffen, Stumpf* or *Byrd* that the trial courts actually weighed such circumstances as aggravating circumstances against the mitigating factors, as is evident from the trial court's opinion in the case herein.

In *Jester, supra,* facts describing the nature and circumstances of the offense were listed under a heading of "AGGRAVATED CIRCUMSTANCES" in the trial court's opinion. In reviewing such opinion we held:

"While these were listed under the heading of 'AGGRAVATED CIRCUMSTANCES,' *it is clear that the trial court understood the difference between statutory aggravating circumstances and other facts describing the nature and circumstances of the offense. For example, the trial court separately identified the aggravating circumstances in its discussion."* (Emphasis added.) *Id.* at 153, 512 N.E. 2d at 969. We are unable to reach a similar conclusion in the cause *sub judice.*

Again, it is necessary to review the pertinent portion of the trial court's opinion. The trial court listed the

following as being aggravating circumstances proved beyond a reasonable doubt:

"1) The manner by which the Defendant purchased the gun, used to kill the victim in this case.

"2) The manner by which the Defendant purchased the ammunition for the gun.

"3) The shooting of the victim, the firing at close range and finally placing the gun almost against her skull and discharging the weapon.

"4) The prior purposeful killing of his wife in 1970 by multiple stab wounds.

"5) Committing the present offense while on parole for the murder of his wife."

As previously discussed, only item four can be found to be a statutory aggravating circumstance. It is also clear that all the other items were actually utilized as aggravating circumstances in the weighing process. The trial court's opinion proceeds to state:

"The killing of the victim in this case was planned, calculated and designed by the Defendant and carried out in an execution fashion. *Further,* he had previously been convicted of second degree Murder for the purposeful killing of his wife. *These* make it impossible for this panel to arrive at any other conclusion than that the aggravated [*sic*] circumstances, proven beyond a reasonable doubt, outweigh the mitigating factors." (Emphasis added.)

The trial court essentially made "prior calculation and design" an aggravating circumstance. It is an element of aggravated murder, but it is not an aggravating circumstance listed in R.C. 2929.04(A).[12] We find that the trial court improperly weighed non-

statutory aggravating circumstances against the mitigating factors it found to be present herein.

The court of appeals also found that the trial court improperly considered nonstatutory aggravating circumstances in the weighing process, but held that such error did not require the sentence to be set aside. We disagree. The court of appeals relied upon its statutory duty to independently review the death sentence pursuant to R.C. 2929.05 as the basis for its decision. In other words, the court of appeals found independent review to be a "cure-all" for the error committed by the trial court.

The trial court *improperly* weighed the aggravating circumstances it found the appellant guilty of committing against the mitigating factors it also found to be present. We cannot accept independent review as a cure in this particular action because we cannot know if the result of the weighing process by the three-judge panel would have been different had the impermissible aggravating circumstances not been present. Because of this and because of the magnitude of the consequences of such a decision, we are compelled to remand this case to the trial court for a new sentencing trial at which the items enumerated as (1), (2), (3), and (5) in the trial court's opinion shall not be considered as aggravating circumstances in the weighing process. Item four can be considered because it is found in the statute and was proven beyond a reasonable doubt.

We reach this result because the General Assembly has set specific standards in the statutory framework it created to guide a sentencing court's discretion "by requiring examination

---

[12] Only R.C. 2929.04(A)(7) requires prior calculation and design under certain circumstances. That section is not applicable to the instant action.

of *specific factors* that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." (Emphasis added.) *Proffitt* v. *Florida* (1976), 428 U.S. 242, 258.

## IV

We must now consider the penalties which may be imposed upon resentencing. This action does not involve a jury's recommendation. Consequently, we are not compelled to find our decision in *Penix, supra,* to be controlling in this matter.[13]

Upon review of the decisions of the United States Supreme Court in *Skipper* v. *South Carolina* (1986), 476 U.S. 1, and *Poland* v. *Arizona* (1986), 476 U.S. 147, we find nothing unconstitutional in permitting the state to seek whatever punishment is lawful on remand. Therefore we hold that when a reviewing court vacates the death sentence of a defendant imposed by a three-judge panel due to error occurring at the penalty phase, not otherwise covered by R.C. 2929.06, and the reviewing court does not find the evidence to be legally insufficient to justify imposition of the death sentence, such reviewing court may remand the action to that trial court for a resentencing hearing at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence. We have *not* found the evidence in the instant action to be legally insufficient to justify imposition of the death penalty. See *Poland, supra,* at 154. Accordingly, having

found error prejudicial to appellant in the sentencing phase, we reverse appellant's sentence of death and remand the cause to the trial court for a resentencing hearing solely for the purpose of determining whether the remaining aggravating circumstance outweighs the mitigating factors presented by appellant, beyond a reasonable doubt.

Appellant's conviction is hereby affirmed, his sentence is reversed and the cause is remanded for further proceedings consistent with law and with this opinion.

*Judgment affirmed in part, reversed in part and cause remanded.*

SWEENEY, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and DOUGLAS, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I concur in the syllabus law announced by the majority, and agree that appellant's conviction should be affirmed. I cannot agree, however, that the trial court erred in considering evidence relevant to the nature and circumstances of the crime involved in that such a consideration was required by R.C. 2929.03 (D)(1) and (3). On this issue, I would concur in the analysis given by Justice Douglas in Part II of his concurrence in part, and would thus affirm appellant's sentence of death as well.

---

[13] *Penix* placed great significance on the role of the jury in the sentencing process in death penalty cases:

"The role of the jury is integral to the sentencing process in death penalty cases. While a recommendation by the jury that the death penalty be imposed must be reviewed and reweighed by the trial and ap-

pellate courts, a jury decision to impose life imprisonment is final. See R.C. 2929.03 (D)(2). If the jury recommends life imprisonment, the trial judge cannot override such a determination and impose a sentence of death. * * *" *Id.* at 373, 513 N.E. 2d at 748, fn. 3.

As to the issue of resentencing, where the trial was before a jury, my position was fully stated in my dissenting opinion in *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 373, 513 N.E. 2d 744, 748. My position remains the same as it would relate to a jury trial. However, in any event, as correctly stated by the majority herein, the law announced in *Penix* has no application to cases involving trial errors during capital sentencing hearings before a three-judge panel. The sole concern of the majority in *Penix* was that Ohio's death penalty statute did not expressly provide for either re-impaneling the original sentencing jury or impaneling a new jury upon remand from an appellate court, coupled with the realization of the practical difficulties inherent in such an undertaking. Such practical concerns are obviously not present in trials held before a three-judge panel.

As noted in my dissenting opinion in *Penix, supra,* at 376, 513 N.E. 2d at 750-751, R.C. 2929.06 applies in only three instances, and a death sentence vacated due to trial errors occurring during sentencing is not one of them. The argument that the syllabus law announced today is unsupportable because our death penalty statute does not provide for such procedure thus misses the point. The statute does not provide for *any* procedure. Therefore, since a convicted defendant whose sentence has been reversed must be resentenced, R.C. 2953.07, this court has no alternative but to fashion that resentencing procedure which is most consistent with existing statutory intent.

When any sentence is reversed on appeal and remanded to the sentencing court, the Constitution permits the state to thereafter seek whatever sentence could have been imposed originally, including, in capital cases, the death penalty. *Bullington* v. *Missouri* (1981), 451 U.S. 430, 442;

*Skipper* v. *South Carolina* (1986), 476 U.S. 1, 8; *Poland* v. *Arizona* (1986), 476 U.S. 147. Ohio's Criminal Code, Title 29, does not limit this practice in cases such as that involved herein. In R.C. 2929.06, the legislature is presumed to have included *all* the situations in which the death penalty may not be sought on remand. See *Penix, supra,* at 376, 513 N.E. 2d at 751 (doctrine of *inclusio unius est exclusio alterius* applied) (Holmes, J., dissenting); *State, ex rel. Hall,* v. *Bd. of Trustees* (1948), 149 Ohio St. 367, 37 O.O. 48, 78 N.E. 2d 719. Thus, where R.C. 2929.06 does not apply, the death penalty may constitutionally be sought along with the other statutory penalties available.

Nor does the specific reference to "*the* panel of three judges" (emphasis added) in R.C. 2929.03 limit the range of penalties on resentencing. First, and most obvious, R.C. 2929.03 is not a *re*-sentencing statute. The only capital resentencing statute, R.C. 2929.06, which is inapplicable here, does not make a distinction between a jury and a three-judge panel for the simple reason that only "the court" has the authority to impose, or reimpose, a criminal sentence. Thus, it is "the court" which resentences a defendant under R.C. 2929.06, whether "the court" is composed of one judge in a jury trial or the three-judge panel.

Second, the legislature was apparently not concerned about the possibility that the composition or the mental attitude of the three-judge panel may have changed on remand, as R.C. 2929.06 does not require *the* three-judge panel to make the resentencing decision thereunder. Unless unable to do so, the judge who presided at a criminal trial must of course also preside at post-conviction proceedings, including sentencing. Crim. R. 25(B)[14]; *Beatty* v. *Alston*

---

[14] Crim. R. 25 provides, in pertinent part:

(1975), 43 Ohio St. 2d 126, 127, 72 O.O. 2d 70, 71, 330 N.E. 2d 921, 923.

Where a sentencing judge is unable to resentence an offender upon remand of the case from an appellate court, Crim. R. 25(B) prescribes the procedure to be followed for substituting another judge to serve on the sentencing court. R.C. 2929.06 merely states that "the *trial court* that sentenced the offender shall conduct a hearing to resentence the offender" (emphasis added), without limiting the remedial provisions of Crim. R. 25(B). Similarly, in cases in which R.C. 2929.06 does not apply, the sentencing court should conduct a hearing on remand to resentence the offender to whatever sentence may lawfully be imposed, with any vacancy on the court due to disability filled pursuant to Crim. R. 25(B).

The syllabus law announced today necessarily fills the void left by the legislature, in the manner most consistent with the existing legislative scheme, and with it I concur. For reasons previously stated, however, I must dissent from the judgment of the majority and would affirm appellant's conviction and sentence.

DOUGLAS, J., concurring in part and dissenting in part. I am alarmed at what the majority opinion does to the Ohio death penalty statute. The majority opinion is flawed in its statutory interpretation, its reasoning and its conclusion and, therefore, I must vigorously dissent. In its zeal to reach its ultimate conclusion, the majority opinion appears to be, "[e]ven in the face of overwhelming evidence of the defendant's guilt, * * * more concerned with procedural niceties and protecting the rights of the criminals than with protecting society from the criminals. * * *" *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 18-19, 514 N.E. 2d 407, 424 (Locher, J., dissenting). It could be said that this decision expresses "* * * a lack of concern for the victims of the crimes involved. * * *" *Id.* at 18, 514 N.E. 2d at 424.

While the majority opinion has other flaws, I limit myself to the discussion of only three.

### I

In its discussion, the majority opinion misinterprets, or at least confuses, the strictures of R.C. 2929.022(A). Why it would be necessary to admit evidence pertaining to a prior purposeful killing "* * * to prove the offense of having a weapon while under a disability" escapes me. In addition to other charges, the defendant herein was charged with having a weapon while under disability in violation of R.C. 2923.13(A)(2). The elements of that offense are (1) knowingly acquire, have, carry or use a (2) firearm (3) having been previously convicted of any felony of violence. Either a defendant, so charged as here, can stipulate to the previous conviction or the record of the previous conviction can be produced. There would be no necessity to examine in any detail the facts of the previous felony of violence in order to establish the disability charge. For the

"Rule 25. Disability of a Judge

"* * *

"(B) After verdict or finding of guilt. If for any reason the judge before whom the defendant had been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge, or, in the case of a single-judge division, by the Chief Justice of the Supreme Court of Ohio, may perform those duties. If such other judge is satisfied that he cannot perform those duties because he did not preside at the trial, he may in his discretion grant a new trial."

majority opinion to suggest that such evidence would be admissible at the guilt stage of a capital case writes R.C. 2929.022 out of the law. Pursuant to that section, a defendant has an absolute right to elect that consideration of an R.C. 2929.04(A)(5) specification be deferred until the penalty stage.

## II

Of greater concern is the blurring, by the majority, beyond recognition of the difference between "aggravating *specifications*" and "aggravating *circumstances.*" While the *specifications* listed in R.C. 2929.04(A)(1) through (8) may be "aggravating circumstances," they are not the *only* aggravating *circumstances* of a particular capital crime.

In faulting the three-judge panel, the majority finds that "* * * the items enumerated as (1), (2), (3), and (5) in the trial court's opinion shall not be considered as aggravating circumstances in the weighing process." In arriving at this conclusion, the majority cites *Proffitt* v. *Florida* (1976), 428 U.S. 242, 258, which, of course, does not at all stand for the proposition for which it is cited.

To arrive at its remarkable conclusion, the majority overlooks (or conveniently forgets) parts of the specific language of R.C. 2929.03(D)(1) and especially (D)(3). In pertinent part, (D)(1) says that "* * * [t]he court, and the trial jury if the offender was tried by a jury, shall consider * * * *any* evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing * * * [and] shall hear testimony and other evidence that is relevant to the *nature* and *circumstances* of the aggravating circumstances the offender was found guilty of committing, * * * that are relevant to the *penalty* that should be imposed on the offender. * * *" (Emphasis added.)

From the foregoing, it is clear that for weighing purposes the "aggravating circumstances" are not limited to the "aggravating specifications" listed in R.C. 2929.04(A)(1) through (8). This is the only conclusion that can be reached when the "weighing" section (for a three-judge panel), R.C. 2929.03(D)(3), is considered. When read in conjunction with the language from R.C. 2929.03(D)(1), as set forth above, R.C. 2929.03(D)(*3*) makes it clear that the "aggravating circumstances" to be weighed against the mitigating factors include "* * * the relevant evidence raised at trial, the testimony, [and] other evidence * * *" which would include, of course, consideration of the *nature* and *circumstances* of the aggravating circumstances as required by R.C. 2929.03(D)(1).

Given the foregoing, can it reasonably be said, as the majority opinion does, that the manner in which the defendant purchased the gun and ammunition and the fact that the victim was shot at close range, execution style, were not factors to be considered by the three-judge panel as "nature and circumstances" of the aggravating circumstances of the crime? I think not!

Given a literal reading, the majority opinion will, henceforth, stand (and be regularly cited to us) for the proposition that a trial jury, a trial court, a three-judge panel, a court of appeals panel and this court may consider *only* the specific statutory specifications listed in R.C. 2929.04(A) in the weighing process without considering the nature and circumstances surrounding the specifications. To me, the proposition is ludicrous. From now on will there ever be another case where any bare-bone specification of R.C. 2929.04(A) will not be outweighed by mitigation, if any mitigation at all is presented?

Today, the majority contorts be-

yond belief the purpose of R.C. 2929.04(A). Its real purpose is to ensure that no person will be charged with or convicted of capital murder unless one of the enumerated specifications exists. It is not the purpose of this section to make these specifications the exclusive criteria in the weighing process. By excluding from the weighing process any "aggravating circumstances" of the crime other than a specific specification listed in R.C. 2929.04(A), the majority does violence to the statute, subverts the will of the General Assembly and ensures further confusion.

### III

Finally, we come to the action of the majority in remanding "* * * the action to that trial court for a resentencing hearing at which the state may seek whatever punishment is lawful, including, but not limited to, the death sentence." The majority cites no authority for this action. There is good reason — none exists. In fact, a reading of the statute must lead one to the opposite conclusion.

We have previously addressed this issue when a trial jury instead of a three-judge panel has heard the case. See *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 513 N.E. 2d 744. Much of the same reasoning applies here.

R.C. 2929.05(A) requires us to "* * * review the judgment in the case and the sentence of death * * * in the same manner that * * * [we] review other criminal cases * * *." When, in other criminal, non-capital cases, we remand to a trial court for resentencing, there is no specific statutory directive that a particular judge carry out the task. Such is not the case, however, with the death penalty statute.

All through the statute, the reference is to "*the* panel of three judges" not to "*a* panel of three judges." See, *e.g.,* R.C. 2929.022(B); 2929.03(C)(2)

(a); 2929.03(D)(3); and 2929.03(F). Likewise, the statute uses the term "*the* trial jury" not "*a* trial jury." There is good reason for this.

Take, as an example, what the majority is doing in this case. The cause is remanded for a resentencing hearing to determine punishment — including death. But the statute requires sentencing action to be taken by *the* panel of three judges. Even if the same three judges are available, can there be any doubt that they are *not* in the same posture as they were at the time of the original trial? Since that time, they will inevitably have discussed the case outside the court, read the opinions of the court of appeals and this court, and have generally been exposed to matters that they had previously, in order to ensure the defendant a fair trial, avoided. This is not to say that our trial judges could not put all this aside in making a subsequent determination. But — are they the *same* panel in *fact* that they are in law?

Further, what if one of the three original judges is no longer available? Do we then permit a resentencing by a panel that has not heard the guilt phase of the trial?

What happens if the same panel is available in this case, but in the next case the panel, as originally constituted, cannot be reconvened? Do defendants then have an equal protection argument?

The fact is that our statute does not provide for the procedure mandated by the majority. While, as indicated by the majority, the United States Supreme Court did approve such a procedure in *Skipper* v. *South Carolina* (1986), 476 U.S. 1, the majority fails to tell our readers that the South Carolina statute *specifically* provides for a procedure upon remand. S.C. Code Ann., Section 16-3-25(E), provides, in pertinent part, that:

"* * * In addition to its authority

regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:

"(1) Affirm the sentence of death; or

"(2) Set the sentence aside and remand the case for resentencing by the trial judge on the record and argument of counsel. * * * If the court finds error prejudicial to the defendant in the sentencing proceeding conducted by the trial judge before the trial jury as outlined under Item (B) of § 16-3-20, the court may set the sentence. aside and remand the case for a resentencing proceeding to be conducted *by the same or a different trial judge and by a new jury impaneled for such purpose.* * * *" (Emphasis added.)

Of course there is no such statutory procedure provided for in the Ohio death penalty law. Other than R.C. 2929.06, which the majority concedes does not apply, there just simply is no authority to accomplish what the majority seeks. It is my judgment that the majority decision establishes a bad precedent and we will live to see the day when, by necessity, it will be overruled.

IV

In this case, we have a defendant who plotted the killing of an innocent victim. He surreptitiously purchased a gun and ammunition and then took his victim outside the bar. Witnesses testified that the defendant shot the victim twice. As she fell, defendant fired another shot at her. To finish the job, after his victim was already down, defendant bent down and shot her in the head at close range. She was literally executed, having been shot four times in the left side of the head. Previously, in 1971, the defendant had been convicted of a purposeful killing.

If the majority believes that there was an R.C. 2929.022 problem in this case, then the conviction should be reversed. If the majority believes that the conviction should stand but there was error in the penalty stage egregious enough to vacate the sentence of death, then the majority should. have the fortitude to remand the cause for resentencing pursuant to R.C. 2929.06 and in accordance with *Penix.*

Since I believe that the evidence of defendant's guilt is overwhelming and the three-judge panel was correct in its deliberations, I would affirm the conviction and the sentence of death.

Accordingly, I concur in part and dissent in part.

MOYER, C.J., concurs in the foregoing opinion.