DECISION
This is an appeal by defendant, Kenneth L. Roberts, from a judgment of the Franklin County Court of Common Pleas reinstating defendant's conviction for gross sexual imposition following the trial court's in camera inspection of the victim's grand jury testimony.
On April 1, 1996, defendant was indicted on one count of rape, in violation of R.C. 2907.02, one count of attempted rape, in violation of R.C. 2923.02, and two counts of gross sexual imposition, in violation of R.C. 2907.05. A jury subsequently found defendant not guilty of rape, under count one, but guilty of gross sexual imposition as charged in count four.
Defendant appealed his conviction, asserting in part that the trial court erred in denying defendant's motion to inspect the grand jury testimony of the victim. In State v.Roberts (Dec. 30, 1997), Franklin App. No. 97APA06-778, unreported (1997 Opinions 5492), this court vacated the judgment of the trial court and remanded the matter to that court with instructions. Specifically, we ordered the trial court to conduct an in camera
review of the victim's grand jury testimony with instructions to reinstate defendant's conviction "if the trial court finds no particularized need for disclosure of the grand jury testimony."
The court trial subsequently ordered that the grand jury proceedings be transcribed. Following the release of the grand jury testimony, defendant filed a motion for judgment of acquittal. Defendant also filed a motion for mistrial, alleging that the prosecutor knowingly used false testimony to obtain defendant's conviction and that the prosecutor suppressed material evidence.
On September 28, 1998, the trial court rendered a decision finding "no particularized need for disclosure of the grand jury testimony." Accordingly, the trial court reinstated defendant's conviction and overruled defendant's motions for judgment of acquittal and mistrial. The decision of the trial court was journalized by judgment entry filed October 14, 1998.
On appeal, defendant sets forth the following three assignments of error for review:
ASSIGNMENT OF ERROR NO I.
 THE TRIAL COURT ERRED WHEN ON REMAND IT DID NOT FOLLOW THIS COURT'S INSTRUCTIONS.
 ASSIGNMENT OF ERROR NO II.
 THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT MR. ROBERTS A NEW TRIAL AFTER HE DEMONSTRATED A PARTICULARIZED NEED FOR THE GRAND JURY TESTIMONY OF THE VICTIM.
 ASSIGNMENT OF ERROR NO III.
 THE TRIAL COURT ERRED WHEN IT OVERRULED MR. ROBERTS' MOTION FOR A MISTRIAL.
Defendant's first and second assignments of error are interrelated and will be discussed together. The primary issue before this court is whether the trial court erred in finding that defendant failed to demonstrate a particularized need for the disclosure of the grand jury testimony of the victim.
In general, "[g]rand jury proceedings are secret."State v. Patterson (1971), 28 Ohio St.2d 181, paragraph three of the syllabus. In State v. Benge (1996), 75 Ohio St.3d 136, 145, the Ohio Supreme Court discussed the issue of disclosure of grand jury testimony, stating:
 In State v. Greer (1981), 66 Ohio St.2d 139, 20 O.O. 3d 157, 420 N.E.2d 982, paragraph two of the syllabus, we stated that an accused is not entitled to see grand jury transcripts unless the ends of justice require it and he shows that "a particularized need for disclosure exists which outweighs the need for secrecy." See, also, State v. Webb (1994), 70 Ohio St.3d 325, 337, 638 N.E.2d 1023, 1034. Such a need exists "`when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial.'" State v. Davis (1988), 38 Ohio St.3d 361, 364-365, 528 N.E.2d 925, 929, quoting State v. Sellards (1985), 17 Ohio St.3d 169, 173, 17 O.B.R. 410, 413, 478 N.E.2d 781, 785. Determining whether there exists a particularized need is a matter within the trial court's discretion. State v. Greer, 66 Ohio St.2d at 148, 20 O.O.3d at 163, 420 N.E.2d at 988.
As noted under the facts, in this court's prior decision, we remanded this case to the trial court to conduct anin camera inspection of the grand jury transcript to determine whether there were inconsistencies between the victim's grand jury testimony and her trial testimony and, if so, whether such inconsistencies were substantial enough to require disclosure for impeachment purposes. The record indicates that the trial court conducted such a review and found no particularized need for disclosure of the testimony. In its decision reinstating defendant's conviction, the trial court held in part:
 This Court has reviewed the grand jury testimony of the victim and compared that testimony to her trial testimony. Generally, the victim's grand jury testimony concerning the Rape in Count One was consistent with her trial testimony. the victim's grand jury testimony concerning counts Two and Three, Attempted Rape and Gross Sexual Imposition, was consistent with her trial testimony except that she put it in [the] fall of 1994 at trial and [the] fall of 1993 at grand jury.
 This confusion over the dates caused the Rule 29 dismissal of Counts Two and Three. The behavior alleged in those counts went to the jury via Count Four because of the confusion over dates. The victim never testified at trial to the behavior that the grand jury indicted as Count Four, i.e., Gross Sexual Imposition in the fall of 1994. That incident involved the alleged touching of the victim's breasts by the Defendant while she was in the kitchen doing the dishes. It is reasonable that such an incident would not stand out if in fact it was, as she testified, a continuing and almost daily course of behavior.
 In light of the above, this Court cannot say that it is probable that the failure to disclose the testimony deprived the Defendant of a fair adjudication of the allegations and thus the Defendant has not shown particularized need. This Court is mindful that defendants can be wrongfully accused and that all defendants have a right to confront and cross[-]examine the witnesses against them. However, it has long been the law of Ohio that particularized need is a prerequisite to the examination of secret grand jury testimony, Greer supra, and the use of the testimony for impeachment purposes.
 It is more probable that disclosure of the victim's grand jury testimony and the Defendant's use for impeachment purposes would have resulted in refreshing her recollection such that all four counts would have gone to the jury. Arguably such use could have been detrimental to the Defendant.
 Clearly, the trial jury in finding the Defendant guilty of Count Four was considering the incident which the grand jury indicted as Count Three. As stated earlier this confusion arose because of the mix-up concerning dates. It is hard to imagine that the Defendant was prejudiced by the confusion, in fact he may have benefited because the jury did not consider the charge of Attempted Rape.
 The Court finds no particularized need for disclosure of the grand jury testimony. The Defendant's conviction is reinstated.
Upon review of the victim's grand jury and trial testimony, we find that the trial court did not abuse its discretion in finding no particularized need for disclosure of the grand jury testimony.
The record indicates that the victim was seventeen years of age when she testified before the grand jury. During her grand jury testimony, she testified that her stepfather, the defendant, first began touching her inappropriately in the summer of 1990, when she was eleven years old, and that this behavior continued for approximately four and one-half years until the middle of 1995 when she was a high school sophomore. The victim stated that over this period of time the defendant touched her on her breasts, buttocks and thigh area.
The victim testified that the inappropriate touching first began when the defendant engaged in playful wrestling with her. The defendant would pursue this behavior at their home while her mother was at work. The defendant was often at home during the daytime, between work shifts, and the touching occurred during the day hours, either before she went to school or after she came home from school but before her mother arrived home from work.
The victim testified that the inappropriate touching during this time occurred "weekly." (Grand Jury ("G.J.") Tr. 8.) She estimated that defendant would touch her "about ten times" per week. She also stated that the touching occurred "mostly in the summertime and he would do it every day." (G.J. Tr. 23.)
The victim testified about one specific incident during a day in the summer of 1990 when defendant was at home and her younger sister was playing outside. The defendant and victim began wrestling and the defendant "started touching me at my chest." (G.J. Tr. 9.) She was wearing a jumper suit and the defendant was touching her over the suit. The defendant "was squeezing real hard, and I would yell at him to stop." (G.J. Tr. 9.) The defendant was wearing pajama shorts with an opening in the crotch area. She stated that "he started wrestling me down, and he tried to make me sit on top of him with both of my clothes on first. Then he would try to pull my clothes off. And then he pulled them off and he penetrated me." When asked whether her clothes came off entirely, She responded, "yes." (G.J. Tr. 9.) She further stated that during this incident the defendant penetrated her vagina area. The defendant ejaculated but she was uncertain whether he ejaculated inside of her. The defendant did not say anything to her following the incident.
During the grand jury proceedings, she was asked whether any inappropriate touching occurred in 1993. She related an incident in which the defendant was attempting to wrestle with her again, and he chased her around the house. The defendant eventually chased her into her parents' bedroom. Catesha testified that defendant "wrestled me to the floor, and he started squeezing my breasts. I ended up struggling, and I went to the window and yelled rape." (G.J. Tr. 15-16.) The defendant "slapped" her to the floor and told her that she should not yell things like that out the window.
The victim related another incident in which defendant was driving her home from school and he started touching her on the leg. She told him to stop. and the defendant pulled to the side of the road and started to push Catesha out of the vehicle.
The victim stated that the last inappropriate touching occurred sometime between the fall and winter of 1994. She was home from school and she was washing the dishes when the defendant touched her breasts. The victim stated that, as she got older, the defendant "wanted to touch me more. But I ended up being more physically stronger. I ended up hitting on him more. That is the last time that happened." (G.J. Tr. 17.)
At the time of trial, the victim was eighteen years of age and she was a senior in high school. Catesha testified at trial that during the summer of 1990 the defendant "was wrestling with me and he penetrated me." (Tr. 49.) She related that her younger sister was at home at the time playing outside, but that her mother was away. The victim stated that the incident occurred during the summer months.
Regarding the 1990 incident, the victim indicated that she had a jumpsuit on at the time and that the defendant was wearing pajamas. At the time the defendant penetrated her, the defendant was on the bottom of the floor and she was on top of the defendant. When asked whether her clothing was taken off, she stated, "no"; rather, the defendant pulled her shorts to one side. (Tr. 52.) The victim explained that the "shorts part" of her jumpsuit were "short," and that the defendant's boxer shorts "had a hole in the middle, and through that way with my shorts being short he was able to penetrate me that way." (Tr. 52-53.) When asked whether the defendant ejaculated, she stated, "[n]ot in me or on me, but I saw it coming out of his penis." (Tr. 53.) The defendant did not say anything to her after this incident. She was eleven years of age at the time of the incident.
The victim related another incident that occurred when she was a sophomore in high school, during the "94/95 school year." The victim and defendant had been wrestling downstairs but ended upstairs in her parents' bedroom. As the defendant wrestled with her in her parents' room, she "knew what was about ready to start happening." (Tr. 55.) The victim thought the defendant was attempting to penetrate her "[b]ecause he tried to get me real down low on the floor and I knew what was going to start all over again like it did before." (Tr. 56.) She yelled "rape" out the window and the defendant "smacked me to the floor and told me to shut up." (Tr. 56.) She stated that during this incident the defendant touched her on the breasts from the outside of her clothing. The defendant did not touch her vagina area.
Thus, in reviewing the victim's grand jury and trial testimony regarding the alleged rape in 1990, the only discrepancy in her testimony involved whether her clothes were on or off at the time the defendant penetrated her. The victim's testimony was consistent as to the year and season (summer of 1990) when the incident occurred, the fact that the incident occurred during the day, the clothing she was wearing (a jumper) as well as the defendant's clothing (pajama-bottom shorts), and the fact that her sister was playing outside and her mother was at work. The victim also testified at the grand jury and at trial that she observed sperm on the defendant and that defendant did not say anything to her after the incident.
As to the 1994 incident, we initially note the following concerning defendant's contention that the victim's grand jury testimony about a 1994 incident differed significantly from her trial testimony of the 1994 incident. Defendant notes that the victim testified during the grand jury about an incident in 1994, in which she alleged the defendant touched her on the breasts as she was in the kitchen washing dishes. Defendant notes that, at trial, the only 1994 incident related by the victim was her account of defendant chasing her around the house and eventually touching her on the breasts in the master bedroom, causing her to cry "rape" out the window. However, the record indicates that she did testify during the grand jury about this incident, but that she stated it happened in 1993 rather than in 1994 as she testified at trial. As noted above, the trial court indicated in its decision that "[t]his confusion over the dates caused the Rule 29 dismissal of Counts Two and Three," and that "[t]he behavior alleged in those counts went to the jury via Count Four because of the confusion over dates." The trial court also noted that the victim never testified at trial as to the behavior the grand jury indicted as count four, i.e., the alleged touching of the victim's breasts while she was in the kitchen.
Regarding the victim's confusion over the dates, the trial court observed that "[i]nconsistencies between indictments and the testimony of child witnesses in sex abuse cases are the norm and not the exception." Ohio courts have given recognition to this view. See, e.g., State v. Barnecut (1988), 44 Ohio App.3d 149,151-152) ("these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time"); State v.Rhoden (May 20, 1997), Pike App. No. 96CA589, unreported (where precise dates and times are not elements of the charged offense which must be proved, they are not essential to indictment; "[t]his is particularly true in cases involving children who are victims of sexual abuse"); State v. Ritchie (April 2, 1997), Lorain App. No. 95CA006211, unreported ("It has been widely held in Ohio that an indictment involving child sexual abuse need not specify exact dates and times of the alleged offenses").
Thus, regarding the facts leading to the jury's conviction for gross sexual imposition, the only discrepancy between the victim's grand jury testimony and her trial testimony involved the date. However, the victim testified both during the grand jury proceedings and at trial that: the incident began with defendant chasing her in the house; the touching occurred in her parents' bedroom; defendant touched her on the breasts; she yelled "rape" near a window, and; the defendant slapped her to the ground.
The fact that an individual is a principal witness for the prosecution is, standing alone, insufficient to establish "particularized need" for the disclosure of that witness' grand jury testimony. State v. Towns (Aug. 29, 1996), Franklin App. No. 95APA11-1496, unreported (1996 Opinions 3429, 3436). Regarding the discrepancy in the victim's testimony as to the date of the incident resulting in defendant's conviction for gross sexual imposition, it has been held that "discrepancies between grand jury testimony and information provided at a later date did not meet the `particularized need' standard, where those discrepancies were not substantial and involved only dates and locations of incidents that were easily clarified by other testimony." Statev. Parsons (Mar. 5, 1999), Hamilton App. No. C-980209, unreported, citing State v. Grewell (1989), 45 Ohio St.3d 4. We agree with the trial court that the victim's confusion over the dates did not prejudice defendant.
Further, we have noted above that there was only one inconsistency between the victim's grand jury and trial testimony as to the 1990 incident, and the record supports the trial court's determination that the victim's testimony was "generally" consistent. In order to meet the burden of particularized need for grand jury testimony, a defendant must show, based on a consideration of "all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." Greer, supra, paragraph three of the syllabus. At trial, defense counsel cross-examined the witness about her recollection of the events at issue, and we note that defendant was acquitted on the count related to the alleged activity in 1990. In considering all of the circumstances, defendant has not demonstrated that he was deprived of a fair adjudication, and we thus conclude that the trial court did not abuse its discretion in finding no particularized need for disclosure of the grand jury testimony.
Under his first assignment of error, defendant appears to contend that the trial court failed to follow this court's prior mandate following remand of the matter. As previously noted, however, the record indicates that the trial court conducted an in camera inspection of the grand jury transcript and, based upon a thorough review, made a finding of no particularized need. Accordingly, we find no merit to defendant's argument.
Based upon the foregoing, defendant's first and second assignments of error are overruled.
Under the third assignment of error, defendant contends that the trial court erred in failing to sustain defendant's motion for mistrial. Defendant's argument is based primarily upon his previous contention that significant inconsistencies exist between the victim's grand jury testimony and her trial testimony. In response, the state argues that the trial court, following this court's remand, was without authority to extend or vary this court's mandate, citing Singleton v. Singleton (1994), 95 Ohio App.3d 467,470-471. Thus, the state contends, the trial court was limited to determining whether defendant had demonstrated a particularized need for disclosure of the grand jury testimony and, if so, to grant a new trial or, upon a finding of no particularized need, to reinstate the conviction and conduct a new sentencing hearing. In light of our determination, under the second assignment of error, that any inconsistencies were not substantial and that the trial court did not err in finding no particularized need for disclosure of the grand jury testimony, defendant's third assignment of error is rendered moot.
Accordingly, the first and second assignments of error are overruled, the third assignment of error is rendered moot, and the judgment of trial court is hereby affirmed.
Judgment affirmed.
PETREE and BRYANT, JJ., concur.