OPINION
{¶ 1} Defendant, George J. Daoud, appeals from his conviction for receiving stolen property having a value in excess of five thousand dollars, in violation of R.C. 2913.51(A). The stolen property was computer parts.
 {¶ 2} Daoud owns and operates several large and diversified businesses. In 1999, he acquired two IBM model AS-400 computers for use in his businesses. Daoud engaged the services of Don Griffith, a service specialist who had experience with the AS-400 model, to put the computers into service. Griffith advised Daoud that one of the computers required replacement of certain parts, a tape drive and network card. Instead of buying the parts, they decided to transfer them from one computer to the other.
 {¶ 3} Daoud told Griffith that the computer from which the parts would be removed, which we shall refer to as "computer one," was a used computer. When Griffith engaged the power on computer one, however, the prompts indicated that it was brand new. Griffith switched the necessary parts from computer one to the other computer, which we shall refer to as "computer two." Griffith made a record of the serial numbers of both computers.
 {¶ 4} The two computer's serial numbers were eventually reported to an IBM employee, Gregory Batchler, who was investigating the separate thefts of two model AS-400 computers. One theft had occurred on or about June 28, 1999, from an Emery Worldwide air freight facility in Delaware County, Ohio. The other theft had occurred in Charlotte, North Carolina. Investigation revealed that their serial numbers corresponded to those of the two computers at Daoud's business, the computer stolen in Delaware County being computer one and the computer stolen in North Carolina being computer two.
 {¶ 5} On June 9, 2000, Detective Pfan of Delaware County informed Dayton Det. Clarence Keller that the stolen computer one might be at Defendant's business at 864 N. Main Street, Dayton. Det. Keller went to Defendant's business that same day. He asked Defendant about the computer in the back room, indicating that had been reported stolen. Defendant did not appear to be surprised, and immediately took Det. Keller to computer one. Det. Keller identified the computer by its serial number and then confiscated it, giving Defendant a receipt.
 {¶ 6} Defendant told Det. Keller that he had purchased computer one from a company in Atlanta, Georgia, the name of which is Computers Source. Defendant produced a receipt, but that receipt showed a cash purchase of two model AS-400 computers, one for fifteen thousand dollars and another for ten thousand. Defendant insisted, however, that he had purchased only one computer, saying "that's just the way they write it up."
 {¶ 7} Det. Keller asked Defendant how he could contact Computers Source. Defendant said he did not know. Det. Keller asked Defendant to write out a statement detailing his involvement in the purchase of the stolen computer. According to Defendant's statement, he had been shopping for computers and a man from Atlanta contacted him and said he had a computer to sell at a reduced price. Defendant accepted the man's offer and the computer was delivered to Defendant's place of business. Defendant said nothing about the second computer he purchased, computer two, or that parts had been removed from computer one and installed in computer two.
 {¶ 8} When Det. Keller attempted to locate Computers Source in Atlanta, he learned that no such company existed. After talking to Don Griffith, Det. Keller learned that there was another IBM model AS-400 computer located at Defendant's business and that it contained parts from the computer Det. Keller had confiscated as stolen property.
 {¶ 9} In early August 2000, Det. Keller called Defendant again and inquired about computer two. Defendant told Keller that he had sold computer two to a company in Dallas, Texas, some months before Keller confiscated computer one. Defendant was unable to supply Det. Keller with the name or address of the company in Dallas or with any documents evidencing the sale of computer two. Defendant invited Det. Keller to return to his business to search for computer two should he wish. When Det. Keller returned to Defendant's business, Defendant's accountant told Det. Keller that he had no records of a computer being sold.
 {¶ 10} Defendant was indicted on December 29, 2000 on a charge of receiving stolen property. Until then, he had insisted that he sold computer two to the Texas company. Shortly after he was indicted, Defendant contacted Det. Keller and said, "I've got the computer. Come and get it. This is all a big mistake."
 {¶ 11} In March 2001, Defendant led Det. Keller to a self-storage facility on Needmore Road in Dayton, where Defendant retrieved computer two and turned it over to Det. Keller. Robert Bowman, a service representative for IBM who specializes in AS-400 computers, inventoried both computer one and two after they were confiscated from Defendant. He discovered that a network card and tape drive valued at $6,095 that were missing from computer one had been installed in computer two.
 {¶ 12} Defendant was screened for the prosecutor's pretrial diversion program but was not accepted in the program. Defendant filed a motion-in-limine prior to trial, seeking to prohibit the State's use of evidence of any statements he made when applying for admission to the diversion program. The trial court ruled that the State could not use Daoud's statements during its case-in-chief but would be entitled to use his statements to impeach him should his trial testimony directly contradict what he said in diversion. Defendant also filed a motion prior to trial seeking disclosure of the transcripts of grand jury testimony. The trial court denied that request.
 {¶ 13} Defendant was found guilty as charged following a jury trial. The trial court sentenced Defendant to three years of community control. Defendant has timely appealed to this court from his conviction.
 First Assignment of Error {¶ 14} "The verdict against Mr. Daoud should be reversed because the trial court erred in ruling that the state could use information obtained through the diversion process against Mr. Daoud if the defense first opened the door by referring to diversion during cross-examination of the state's witnesses or during defense's own case in chief.
 {¶ 15} Pursuant to R.C. 2935.36, the Montgomery County Prosecutor's Office has since 1981 maintained a pretrial diversion program for first offenders. The program is operated under standards approved by the common pleas court. If an indicted defendant is accepted for diversion and successfully completes its requirements, the charges against him are dismissed.
 {¶ 16} Defendants when they apply for admission into the diversion program are required to execute a written waiver of their Fifth Amendment rights. If a defendant is not admitted, the waiver is inoperative and none of the statements the defendant made to diversion personnel are admissible against him at trial, for any purpose. If he is admitted but fails to complete the program, the waiver has a limited application that permits the State to introduce evidence at trial of statements the defendant made, but for impeachment purposes only.
 {¶ 17} Daoud applied for admission to diversion but his application was denied. That barred the State from offering evidence of any statements Daoud made in the application process, for any purpose. Prior to trial, Daoud filed a motion in limine to exclude any and all such evidence from use by the State.
 {¶ 18} The court granted Daoud's liminal motion, in part. The court ruled that the State could not introduce in the State's case-in-chief evidence of any statements Daoud made when he applied for diversion. The court further ruled, however, that the State could use any of those statements to impeach Daoud, should he testify.
 {¶ 19} The State concedes that the trial court misconstrued the express terms of the standards the common pleas court adopted when it approved the prosecutor's diversion program in 1981. Not having been accepted in the program, none of Daoud's statements to diversion personnel were admissible for any purpose, including impeachment. The State contends, however, that Daoud was not prejudiced by the trial court's error or otherwise denied his right to a fair trial. We agree.
 {¶ 20} As a preliminary matter, we note that the record does not reflect what statements Daoud made to diversion personnel. Therefore, we cannot weigh the prejudicial impact their use by the State might have had, even when introduced for the limited purpose of impeachment pursuant to the court's liminal ruling.
 {¶ 21} Daoud argues that he was prejudiced, nevertheless, because the possibility that his statements might be used for impeachment inhibited his defense. Specifically, Daoud complains that it prevented him from explaining to the jury that during the diversion screening process he offered to give police the stolen computer parts. Thus, the jury was left to speculate why he waited until March 2001 to turn over the parts, instead of acting earlier after he learned they were stolen.
 {¶ 22} The court's liminal ruling didn't prevent Daoud himself from testifying about his alleged offer when seeking diversion. He failed to proffer that evidence, and so we cannot assume its existence. More importantly, that prevents us from knowing at all how Daoud might have been impeached had he so testified.
 {¶ 23} Daoud also complains that the erroneous liminal ruling prevented him from cross-examining Det. Keller about conversations they had during diversion, because to do so would have opened the door to the State's use of that evidence. However, the court's ruling permitted the evidence to be used to impeach Daoud, not to rehabilitate the State's witness. Further, Defendant didn't proffer the questions he would have asked Det. Keller or the responses he would have received. Therefore, we cannot know how he was prejudiced.
 {¶ 24} Even though the court's liminal ruling was incorrect in its terms, it was incumbent on Daoud to offer the evidence he wished to offer and then challenge the State's efforts to use diversion evidence, both in order to enable the trial court to make a final determination of its admissibility and to preserve any error for purposes of appeal. State v.Clowers (1999), 134 Ohio App.3d 450. Having failed to offer the evidence he claims he was inhibited by the court's ruling from offering, or to ask the questions he was prevented from asking, or to proffer the evidence and questions, Daoud cannot show the prejudice that reversible error requires.
 {¶ 25} The first assignment of error is overruled.
 Second Assignment of Error {¶ 26} "The trial court erred in denying Mr. Daoud's motion to review the grand jury transcript and thereby denied Mr. Daoud the opportunity to prove that the indictment against him was improperly obtained by the state through use of diversion information and should have been dismissed."
 {¶ 27} Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and the defense shows that a particularized need for disclosure exists which outweighs the need for secrecy. State v. Greer (1981), 66 Ohio St.2d 139. A "particularized need" exists when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial. State v. Davis (1988), 38 Ohio St.3d 361, 365.
 {¶ 28} Defendant filed a motion before trial seeking disclosure of the grand jury testimony, claiming that his indictment was founded upon illegal, incompetent evidence. Specifically, Defendant claimed he had "significant reason" to believe that the State had used information acquired during the diversion screening process to secure his indictment, contrary to the provisions of the diversion program. Defendant argues that his "significant reason" consists of two things: (1) that the State included items relating to diversion in the pretrial discovery materials it gave the defense, and (2) that a diversion officer's name appeared on the State's amended list of witnesses the State intended to call for trial.
 {¶ 29} An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of incompetent evidence. United States v. Calandra (1974), 414 U.S. 338, 344-345;Davis, supra. Furthermore, we note that whatever discovery materials the State gave to Defendant are not a part of the record in this appeal. Thus, we do not know whether that discovery material included items relating to the diversion screening process.
 {¶ 30} Discovery pertains to evidence that the State intends to introduce at trial, not to evidence it presented to the grand jury to obtain an indictment. The State's reference to diversion materials in discovery does not demonstrate that diversion material was presented to the grand jury. With respect to Defendant's complaint that a diversion officer's name appeared on the State's witness list, that does not demonstrate that the witness was presented to the grand jury. Defendant failed to demonstrate a probability that the failure to disclose the grand jury testimony would deprive him of a fair trial, and no particularized need for that material was shown. Therefore, the trial court did not abuse its discretion in refusing to disclose that material. Davis, supra.
 {¶ 31} The second assignment of error is overruled.
 Third Assignment of Error {¶ 32} "Mr. Daoud's conviction should be reversed because repeated misconduct by the prosecutor deprived Mr. Daoud of his right to a fair trial under the due process clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section ten of the Ohio State Constitution."
 {¶ 33} The test for prosecutorial misconduct is whether the prosecutor's acts or remarks were improper in their nature and character and, if so, whether the substantial rights of the defendant to a fair trial were prejudiced thereby. State v. Lott (1990), 51 Ohio St.3d 160,165; State v. Bey, 85 Ohio St.3d 487, 1999-Ohio-283; State v. McGonegal
(November 2, 2001), Montgomery App. No. 18639. The focus of that inquiry is upon the fairness of the trial, not the culpability of the prosecutor. State v. Apanovitch (1987), 33 Ohio St.3d 19.
 {¶ 34} The prosecutor is entitled to a certain degree of latitude in summation. State v. Treesh, 90 Ohio St.3d 460, 466, 2001-Ohio-4. The prosecutor may draw reasonable inferences from the evidence presented at trial and comment upon those inferences during closing argument. Id. We view the closing argument in its entirety when determining whether allegedly improper remarks made in that argument were prejudicial. Id. Prosecutorial misconduct does not warrant reversal of a conviction unless it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would not have found Defendant guilty. State v. Benge,75 Ohio St.3d 136, 1996-Ohio-227.
 {¶ 35} When a prosecutor's acts or comments are improper, the defendant must promptly bring the matter to the court's attention through an objection in some form. Otherwise, the court does not abuse its discretion in permitting the act or comment concerned. If no objection is made, the error is waived for purposes of appeal. We then weigh any resulting prejudice to the defendant under the plain error standard. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. Statev. Long (1978), 53 Ohio St.3d 91; State v. Greer (1988), 39 Ohio St.3d 236;State v. Wickline (1990), 50 Ohio St.3d 114.
 {¶ 36} Defendant first complains that the prosecutor alluded to inadmissible evidence during cross-examination of Defendant when the prosecutor asked the following question:
 {¶ 37} "Now, you told Det. Keller this story about it being delivered to your place of business. Whatever happened with a transaction alongside the road on I-70?"
 {¶ 38} Defendant alleges that this question was improper because it implicated a statement Defendant made during the diversion application process about how he had acquired the two computers in question: that they were delivered to him at night at an I-70 truck stop. The State concedes it its brief that this question was improper, not because it relied on a statement Defendant made during diversion application but because it is based upon a statement the Defendant made which the State failed to timely disclose to the defense, as Crim.R. 16 requires.
 {¶ 39} The question the prosecutor asked was permissible under the court's, albeit improper, liminal ruling. No misconduct on the prosecutor's part exists because the error in the liminal ruling does not itself create prosecutorial misconduct. Further, the court sustained the Defendant's objection to the question, which avoids prejudice resulting from it. Defendant didn't request a special instruction to the jury to disregard any implications the question raised. So, he cannot now complain that those implications may have lingered in the juror's minds because the question was asked.
 {¶ 40} Defendant next complains that the prosecutor commented upon evidence not in the record concerning the transfer of parts from computer one to computer two.
 {¶ 41} During opening statements the prosecutor stated: "Defendant asked Don Griffith to remove two components from computer one and put them in computer two." The evidence presented at trial demonstrates that Defendant and Don Griffith made a joint decision to transfer parts from computer one to computer two in order to make computer two capable of running Defendant's businesses. Defendant was aware of and agreed with the decision to transfer the parts from computer one to computer two, and checked on Mr. Griffith's progress while the work was being done. Defendant's culpability, if he then knew that the parts were from a computer that was stolen, is not avoided by Griffith's recommendation. The prosecutor's statement was not improper.
 {¶ 42} During closing argument the prosecutor stated that Defendant "knows he removed property from computer one and put it into computer two." Defendant objected to that comment, and the trial court reminded the jurors that the statements of counsel during closing argument is not evidence. The prosecutor's statement is a reasonable inference that the jury could draw from the evidence presented at trial. The prosecutor's comment upon reasonable inferences drawn from the evidence is not misconduct. Treesh, supra.
 {¶ 43} Next, Defendant alleges that the prosecutor improperly commented upon matters not in issue. Defendant complains that the prosecutor's comment on Defendant's failure to turn computer two over to the police when he learned it was stolen was improper because Defendant was not charged with retaining a stolen computer, only computer parts.
 {¶ 44} Defendant was charged with receiving stolen property, certain computer parts. The evidence presented by the State demonstrates that Defendant was told by Det. Keller in June 2000 that computer one was stolen. Defendant was then aware that component parts had been removed from computer one and installed in computer two. Thus, there is evidence that Defendant knew or had reasonable cause to believe that parts which were in his possession were stolen. Yet, Defendant retained computer two and the stolen parts it contained until March 2001, even after police had inquired about computer two in August 2000.The prosecutor's comment upon Defendant's failure to turn computer two over to the police after learning the parts it contained were stolen was not improper.
 {¶ 45} Finally, Defendant claims that the prosecutor improperly expressed a personal opinion about his credibility and attempted to convince the jury that the defense was trying to mislead them when during closing argument the prosecutor stated:
 {¶ 46} "Deception is what this case is about. Deception practiced by the Defendant. He practiced it in this courtroom yesterday. Everybody else is a liar." (T. 393).
 {¶ 47} After making this comment, the prosecutor contrasted for the jury Defendant's trial testimony with the testimony of Don Griffith and Det. Keller, arguing that the inconsistencies between their stories and his shows Defendant's testimony was not worthy of belief. It is entirely proper for a prosecutor to argue that a defendant's trial testimony is not credible based upon the evidence and testimony of other witnesses. State v. Carpenter (1996), 116 Ohio App.3d 615, 624. A prosecutor may argue reasonable inferences drawn from the evidence, which is what occurred here. The statements complained of were not improper. Defendant's failure to object to this comment waived all but plain error. We see no error, much less plain error.
 {¶ 48} Defendant also complains because the prosecutor repeatedly stated in closing argument that Defendant told him a different story than he had told his own attorney, different stories for different attorneys. Once again Defendant failed to object. This comment was not improper because it is based upon Defendant's changing stories and conflicting testimony he gave on direct and cross-examination. The prosecutor's statement was a fair comment upon the evidence and not misconduct. There is no error or plain error.
 {¶ 49} All the matters about which Defendant complains operated to his detriment in relation to the ultimate issues of guilt and innocence the jury was required to determine. However, it's the prosecutor's job to present that evidence, and to urge the jury in the strongest terms consistent with a defendant's right to a fair trial to weigh the evidence in the breach in favor of a finding of guilt. We have acted to reverse convictions when prosecutors cross that line. See State v. Miller (Sept. 22, 2000), Montgomery App. No. 18011. However, and because the claim alleges an ethical violation, we have also cautioned the defense bar to avoid charges of prosecutorial misconduct that lack any basis,McGonegal, as these do.
 {¶ 50} The third assignment of error is overruled.
 Fourth Assignment of Error {¶ 51} "Mr. Daoud's conviction should be reversed because the verdict of the jury was against the manifest weight of the evidence."
 {¶ 52} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. Hufnagle,supra. The proper test to apply to that inquiry is the one set forth inState v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 53} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 54} Defendant was found guilty of violating R.C. 2913.51(A) which provides: "No person shall receive, retain or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Factors to consider in determining whether Defendant knew or should have known that the property was stolen include:
 {¶ 55} "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise." State v. Davis (1988),49 Ohio App.3d 109.
 {¶ 56} Defendant does not dispute that he purchased two computers and that, on June 9, 2000, he learned that computer one was stolen when Det. Keller came to his business and confiscated that computer. Defendant claims, however, that he did not at that time know or have reason to believe that computer two was also stolen, or that parts had been removed from computer one and installed in computer two. Defendant testified at trial that he was not aware the parts had been transferred, that he did not authorize any transfer of parts, and that he did not see anyone transfer parts from computer one to computer two.
 {¶ 57} Don Griffith, the technician Defendant called to examine the two computers Defendant had purchased, testified that he went to Defendant's business on July 14, 1999, and that he and Defendant jointly decided to transfer the tape drive and network card from computer one to computer two. Mr. Griffith proceeded to switch those parts that same day. Defendant was aware that this work was done, and periodically checked on Mr. Griffith's progress.
 {¶ 58} If the testimony of Don Griffith is believed, Defendant clearly had reason to believe on June 9, 2000, when Det. Keller confiscated computer one, that by retaining computer two and the parts it contained which had been transferred from computer one he retained stolen property he'd received. By its guilty verdict the jury obviously chose to believe Griffith's version of the events rather than Defendant's, which it was entitled to do.
 {¶ 59} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. Statev. DeHass (1967), 10 Ohio St.2d 230. Substantial deference should be extended to a fact-finder's credibility determinations. State v. Lawson
(August 22, 1997), Montgomery App. No. 16288. This court will not substitute its judgment for that of the trier of facts on the issue of credibility unless it is patently apparent that the trier of fact lost its way. State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 60} In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 61} The fourth assignment of error is overruled.
 Fifth Assignment of Error {¶ 62} "The verdict against Mr. Daoud should be reversed because Mr. Daoud was eligible for and should have been accepted into the prosecutor's pretrial diversion program."
 {¶ 63} Defendant has not directed our attention to any constitutional or statutory provision, nor are we aware of any, that confers on an accused a right to be accepted into prosecutor's pretrial diversion program. To the contrary, that is a matter resting solely within the discretion of the prosecutor. See: State v. Newberry (1991),77 Ohio App.3d 818. Moreover, the standards governing operation of the diversion program as approved by the common pleas court likewise do not afford Defendant a right to be admitted into the program. Although Defendant may have met the initial eligibility requirements to be considered for diversion, Defendant apparently refused to acknowledge his involvement in the offense, which is required for admission into the program. See: September 16, 1981 Order and Entry approving standards for operation of the diversion program.
 {¶ 64} The fifth assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and WOLFF, J., concur.