OPINION
{¶ 1} Defendant-appellant Christopher L. Brown appeals from his convictions and sentences in the Delaware County Court of Common Pleas in Case No. 04-CR-I-05-231 on six counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05 (A)(4) and in Case No. 04-CR-I-06-255 on two counts of rape, felonies of the first degree, in violation of R.C. 2907.02 (A)(2), two counts of unlawful sexual conduct with a minor, felonies of the third degree, in violation of R.C. 2907.04, four counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05 (A)(4), and two counts gross sexual imposition, felonies of the fourth degree, in violation of R.C.2907.05 (A)(1). The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE CASES AND FACTS {¶ 2} On May 27, 2004, appellant was indicted in Case No. 04-CR-I-05-231 for six counts of gross sexual imposition and one count of rape arising out of the allegations made by appellant's twelve year old niece, Kimberly Haller.
 {¶ 3} On June 10, 2004, appellant was indicted in Case No. 04-CR-I-06-255 for eighteen sexually related crimes arising out of the allegation made by the appellant's seventeen year old sister-in-law, Lauren Haller. The breakdown of this indictment is as follows: six counts of gross sexual imposition with a victim under age 13 (Counts 13, through 18); three counts of gross sexual imposition by force (Counts 1, 5, and 9); three counts of unlawful sexual conduct with a minor (Counts 2, 6, 10); three counts of sexual battery (Counts 3, 7, 11); and three counts of rape (Counts 4, 8, 12).
 {¶ 4} In the body of the indictment the counts are grouped together to delineate each incident alleged. For example, Counts 1 through 4 allege one incident with two different types of conduct by the accused, i.e. sexual contact and sexual conduct. Likewise, Counts 5 through 8 allege one incident; and, Counts 9 through 12 allege one incident. As for the remaining counts of the indictment (Six counts of gross sexual imposition), each count represents a single, separate incident.
 {¶ 5} On August 9, 2004, over the objections of defense counsel, the trial court ordered the two indictments to be consolidated. The underlying factual basis for these indictments is as follows.
 {¶ 6} On April 8, 2004, Lauren Haller disclosed to her boyfriend's mother, Sandy Thibault, that she had been sexually abused. Unbeknownst to Lauren, Ms. Thibault is a "mandatory reporter" who took the appropriate steps in the State of Minnesota where Lauren now lives to report Lauren's disclosure to the Scott County, Minnesota authorities. Lauren's exchange with Sandy Thibault triggered an investigation that eventually would lead to the questioning of Lauren Haller's niece, Kimberly Haller, in Delaware County, Ohio.
 {¶ 7} Upon receiving the report from Scott County, Margaret Sodetani, a worker with the Scott County Children's Services, interviewed Lauren Haller. After interviewing Lauren, Ms. Sodetani made arrangements for law enforcement officers in Ohio to consider any possible criminal charges.
 {¶ 8} Simultaneously to Ms. Sodetani's actions, the Haller family was beginning to learn of Lauren's disclosures. Lauren called Cassie Haller Brown, her half-sister and appellant's wife, to tell her about the sexual abuse. Cassie Brown in turn called her brother and sister-in-law, Craig and Wendy Haller who lived around the block and told them of Lauren's allegations.
 {¶ 9} Based upon Cassie's phone conversation concerning Lauren's allegations, Wendy Haller questioned her daughter, Kimberly Haller, concerning whether anyone had touched her in her "bath suit area." Kimberly Haller responded: "Kris does." Wendy Haller then informed Cassie Brown that Kimberly had also been abused by appellant.
 {¶ 10} Kimberly Haller was interviewed by Jenna Kitchen of the Delaware County Department of Jobs and Family Services and Detective Robert Penrod of the Delaware Police Department. During this interview, Kimberly Haller disclosed that he appellant had touched her breast and genitalia during three or four incidents at his home. Kimberly further disclosed that appellant touched her while she was watching television as her sister and her Aunt Cassie slept.
 {¶ 11} Detective Penrod questioned Kimberly about where exactly the defendant had touched her. To accomplish this, Detective Peron used his hands to simulate the female genitalia. When Detective Penrod observed Kimberly's response he believed penetration had taken place. However, when directly asked about "penetration" Kimberly denied to Detective Penrod that any penetration had taken place.
 {¶ 12} Detective Penrod interviewed the appellant on May 21, 2004. Appellant denied that any sexual contact had taken place.
 {¶ 13} At trial Lauren Haller testified that she remembered four separate incidents wherein appellant touched her breasts. One incident occurred when she had a pillow under her head, pretending to be asleep; appellant rubbed her breasts over her clothes. She testified that the same thing happened later that same year. During this incident appellant had to move one of her arms and appellant's hands went underneath her shirt. Again Lauren pretended to be asleep on the couch in the basement. Appellant groped her breasts another time on a small couch in the basement. During this incident, appellant moved the blanket from Lauren, reached under her shirt and bra and fondled her bare breasts. The final groping incident happened in the upstairs living room.
 {¶ 14} Lauren further testified that once appellant moved out of her father's house to a residence in Delaware County, Ohio, appellant continued to touch her while she stayed at his home. By this time Lauren was over the age of thirteen. Lauren testified that one instance occurred soon after appellant moved to Delaware during her summer visitation with her father. Lauren testified that while she was on the long couch in the family room appellant groped her breasts and put his mouth on her breast. Lauren testified that appellant groped her again while she was asleep on a chair in the family room. During this incident, appellant came up from behind her and reached down her shirt and underneath her bra. During another incident, appellant knelt down by the recliner and reached underneath her shirt putting his mouth on her breast. During this incident appellant also reached up her pant leg and put a finger in her vagina. None of these incidents occurred during the summer of 2003.
 {¶ 15} Lauren testified as to two instances that occurred during the summer of 2003. One incident occurred in appellant's spare bedroom where she wore a red bra. The other one occurred while she was in the recliner in the living room.
 {¶ 16} At trial Kimberly Haller testified that appellant had molested her on three or four distinct occasions. During each incident appellant touched her in the "bra area" underneath her bra. Appellant, during two of the incidents also touched her "in between the legs." She testified that the touching started when it was cold and occurred between Christmas and February.
 {¶ 17} A board certified forensic pathologist, Dr. Jeff Smalldon, testified on behalf of appellant. Dr. Smalldon concluded that the interviewing process with respect to Lauren Haller was tainted.
 {¶ 18} At the conclusion of voir dire, the trial court permitted the prosecutor to amend the indictment over the objection of defense counsel.
 {¶ 19} At the conclusion of the State's case, the trial court permitted the prosecutor to amend the Bill of Particulars, again over the objections of defense counsel.
 {¶ 20} Pursuant to appellant's Crim. R. 29 motion at the end of the State's case, the trial court dismissed the following counts; In Case No. 04-CRI-05-231 (Kimberly Haller's case) counts 4, 6, 7; in Case No. 04-CRI-06-255 (Lauren Haller's case) counts 17 18.
 {¶ 21} After hearing sixteen witnesses over four days the jury on November 11, 2004 returned guilty verdicts as follows: On Case No. 04-CRI-05-231(Kimberly Haller's case), the jury found appellant guilty of counts 1, 2, 3, 5. On Case No. 04-CRI-06-255 (Lauren Haller's case) the jury found appellant guilty of counts 1, 2, 4, 5, 9, 10, 12, 13, 14, 15, 16.
 {¶ 22} After the trial, appellant moved for acquittal pursuant to Crim. R. 29 and for a new trial pursuant to Crim. R. 33. Based on appellant's motions, the trial court released the Grand Jury transcripts of Lauren Haller and Kimberly Haller to ensure no variance existed between trial testimony and the evidence presented to the Grand Jury. On January 6, 2005 the trial court ruled on appellant's post-trial motions. Specifically, the trial court ruled that Count 9 in Case No. 04-CRI-06-255 (Lauren Haller's case) be dismissed because it was not the same incident that the Grand Jury had heard and was a separate incident. Appellant's motion for a new trial was denied.
 {¶ 23} On January 24, 2005, the trial court sentenced appellant to an aggregate sentence of 12 years. The court also imposed a fine of $2,000.
 {¶ 24} Appellant timely appealed and submits the following six assignments of error for our consideration:
 {¶ 25} "I. THE PROSECUTOR ERRED WHEN SHE FAILED TO PROVIDE DEFENSE COUNSEL WITH A COPY OF KIMBERLY HALLER'S GRAND JURY TESTIMONY PRIOR TO TRIAL.
 {¶ 26} "II. THE TRIAL COURT ERRED WHEN IT DID NOT GRANT APPELLANT'S MOTION TO COMPEL DISCOVERY AS TO LAUREN AND KIMBERLY HALLER'S COUNSELLING [SIC] RECORDS.
 {¶ 27} "III. THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE T AMEND THE INDICTMENT ON THE FIRST DAY OF TRIAL AND TO AMEND THE BILL OF PARTICULARS UPON CONCLUSIN OF THE STATE'S CASE IN CHIEF.
 {¶ 28} "IV. THE TRIAL COURT ERRED WHEN IT DID NOT CONTINUE THE PROCEEDING AFTER IT PERMITTED THE PROSECUTOR TO AMEND THE INDICTMENT AND THE ALREADY AMENDED BILL OF PARTICULARS.
 {¶ 29} "V. THE TRIAL COURT ERRED WHEN IT ORDERED THAT THE INDICTMENTS BE CONSOLIDATED.
 {¶ 30} "VI. THE ACTS AND OMISSIONS OF TRIAL COUNSEL DEPRIVED CHRISTOPHER BROWN OF THE EFFECTIVE ASSISTANCE OF COUNSEL."
 I. III. {¶ 31} In his First Assignment of Error appellant maintains that the State was obligated to provide the appellant with the grand jury testimony of Kimberly Haller because the testimony was favorable to the defense. The thrust of appellant's argument is that Kimberly's testimony at trial concerning the dates of the alleged incidents was inconsistent with her grand jury testimony. In his Third Assignment of Error appellant contends that the trial court erred in permitting the State to amend the Indictment as to Counts Nine through Twelve in Lauren Haller's case on the first day of trial to extend the applicable time period by two years, and further in permitting the State to amend the Bill of Particulars at the conclusion of the State's case to expand the applicable time periods in Kimberly Haller's case and to change Count Four from fondling the breast of Kimberly Haller to fondling her genitals. We will address these assignments of error together because the issues are interrelated.
 {¶ 32} Prior to trial, the court granted appellant's request to have the grand jury testimony transcribed and available if needed at trial. (Judgment Entry Granting Defendant's Motion for Witness Statements, filed Sept. 22, 2004). Although trial counsel never formally requested an opportunity to review the grand jury testimony of Kimberly or Lauren, the trial court did note: "I read the Grand Jury testimony. It's not inconsistent with what was testified to here. Certainly we'll make it a part of the record for appeal purposes and you can place that argument before the Court of Appeals." (T. at 713).
 {¶ 33} Subsequent to the appellant's jury trial and conviction, appellant renewed his request to release the Grand Jury Transcripts of both Kimberly and Lauren Haller by motion filed November 24, 2004. This request was made in conjunction with appellant's requests for a Judgment of Acquittal, and Motion for a New Trial filed the same date. In its Judgment Entry filed December 14, 2004, the trial court released the transcripts to appellant's trial counsel. The trial court noted that the issue raised by appellant's motions was "whether the Counts in the Indictment, some as amended, reflect the testimony heard by the Grand Jury." (Id.). The Court found that appellant "should review the Grand Jury testimony to enable him a fair adjudication of the issues contained in his motions." (Id.).
 {¶ 34} The trial court overruled appellant's motion for acquittal and new trial by Judgment Entry filed January 6, 2005.
 {¶ 35} In his appeal before this court, appellant first contends that the Grand Jury testimony is inconsistent with the statement Kimberly made to Detective Penrod concerning the dates of the offenses.
 {¶ 36} On May 14, 2004 Kimberly Haller was interviewed by Detective Robert Penrod of the Delaware City Police Department. (T. at 409-10). According to Detective Penrod's written summary of the interview, Kimberly told Detective Penrod that there were three instances of sexual abuse. (See, State of Ohio's Supplemental Memorandum Contra Defendant's Motion for Acquittal and for New Trial, filed Jan 4, 2005 at Exhibit 3, p. 5). The first incident occurred on a weekend after Christmas of 2003, but Kimberly was unsure of whether it was during the month of December or January. (Id.) Kimberly told Detective Penrod that appellant had touched both of her breasts on this occasion. (Id.). The second incident occurred after the first incident but before Valentine's Day. (Id.). On this occasion appellant fondled her breast and her genitilia. (Id.). The third incident occurred after St. Patrick's Day but before Easter. On this occasion appellant fondled her breast, genitilia and, according to Detective Penrod, appellant digitally penetrated Kimberly. (Id.). At trial Detective Penrod testified that Kimberly had stated that appellant did not penetrate her. (T. at 417). However, he apparently drew his conclusion that penetration occurred from a gesture he made to Kimberly using his hands to represent the female genitilia. (Id.).
 {¶ 37} On May 26, 2004 Kimberly Haller testified before the Delaware County Grand Jury. Kimberly testified that appellant touched her "chest and in between the legs." (Grand Jury Testimony of Kimberly Haller at 4). She testified that this conduct occurred three different times. (Id. at 6). Kimberly was unsure of the specific dates of each incident. (Id. at 4). She believed that the first incident occurred around Christmas, 2003. (Id. at 7). The second incident occurred after Christmas. (Id). The third incident occurred in January after Christmas. (Id.). Kimberly further testified that she did not remember if any of the incidents were near Valentine's Day or St. Patrick's Day. (Id. at 7).
 {¶ 38} On May 27, 2004 appellant was indicted by the Delaware County Grand Jury with seven counts relative to Kimberly Haller. Each count was alleged to have occurred "during the period of December 1, 2003 through April 15, 2004." In response to appellant's request for a more specific time period, the State filed a Bill of Particulars on October 20, 2004. The Bill of Particulars maintained the time period of December 1, 2003 through April 15, 2004. However with respect to Count One the time period was further specified as "sometime before Christmas 2003." Count 2 was further specified as occurring "after the first incident but before Valentine's Day 2004." Counts Three and Four were further specified as "after Christmas 2003." Counts Five, Six and Seven were specified as "after St. Patrick's Day, but before Easter 2003." The Bill of Particulars did not expand the time period set forth in the Indictment. In other words, the incidents, even with the more specific allegations concerning the dates, were all alleged to have occurred during the period of December 1, 2003 through April 15, 2004.
 {¶ 39} Kimberly Haller testified during appellant's jury trial on November 5, 2004. At trial Kimberly testified that she was not sure about the exact dates:" Like it was in between Christmas and like, I think March . . . [b]ecause I remember Christmas lights and — wait, I remember Valentine's Day. So it wasn't quite March, I don't think." (T. at 366). Kimberly testified that on the first two occasions appellant fondled her breasts and genitilia, but on the third occasion he fondled her breasts but did not touch her genitilia.
 {¶ 40} On November 9, 2004 the State filed a Second Amended Bill of Particulars. With respect to the charges involving Kimberly Haller all seven counts were alleged to have occurred "during the time period of December 1, 2003 through April 15, 2004." In other words, the Second Amended Bill of Particulars mirrored the original time frame set forth in the Indictment.
 {¶ 41} Appellant claims on appeal that the "jury should have heard the contents of Kimberly Haller's grand jury testimony and compared it to her initial statement for purposes of evaluating her credibility". (Appellant's Brief at 7). In his Third Assignment of Error, appellant contends that expanding the time periods for all the offenses in both Kimberly and Lauren's cases modified the essential facts supporting the charges.
 {¶ 42} Appellant first points to the different time period that Kimberly alleged the incidents took place in her initial statement to Detective Penrod and her grand jury testimony. Appellant further notes that Kimberly did not allege penetration during her grand jury testimony. Appellant claims that this is favorable evidence bearing on the credibility of the State's witness therefore the State was obligated to provide the information to the appellant pursuant to Brady v.Maryland (1963), 373 U.S. 83. Appellant further argues that expanding the time period by two years in Lauren's case was prejudicial.
 {¶ 43} In general, "[g]rand jury proceedings are secret." State v.Patterson (1971), 28 Ohio St.2d 181, 277 N.E.2d 201, paragraph three of the syllabus. In State v. Benge (1996), 75 Ohio St.3d 136, 145,661 N.E.2d 1019, the Ohio Supreme Court discussed the issue of disclosure of grand jury testimony, stating:
 {¶ 44} "In State v. Greer (1981), 66 Ohio St.2d 139, 20 O.O.3d 157,420 N.E.2d 982, paragraph two of the syllabus, we stated that an accused is not entitled to see grand jury transcripts unless the ends of justice require it and he shows that `a particularized need for disclosure exists which outweighs the need for secrecy.' See, also, State v. Webb (1994),70 Ohio St.3d 325, 337, 638 N.E.2d 1023, 1034. Such a need exists "`when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial.'" State v.Davis (1988), 38 Ohio St.3d 361, 364-365, 528 N.E.2d 925, 929, quotingState v. Sellards (1985), 17 Ohio St.3d 169, 173, 17 O.B.R. 410, 413,478 N.E.2d 781, 785. Determining whether there exists a particularized need is a matter within the trial court's discretion. State v. Greer,66 Ohio St.2d at 148, 20 O.O.3d at 163, 420 N.E.2d at 988".
 {¶ 45} A trial court's decision allowing an amendment that changes the name or identity of the offense charged constitutes reversible error regardless of whether the accused can demonstrate prejudice. State v.Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490. When an amendment is allowed that does not change the name or identity of the offense charged, the accused is entitled to a discharge of the jury or a continuance, "unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." Id., quoting Crim.R. 7(D). A trial court's decision to permit the amendment of an indictment is reviewed under an abuse of discretion standard. State v.Beach, 148 Ohio App.3d 181, 772 N.E.2d 677, 2002-Ohio-2759, at ¶ 23, appeal not allowed, 96 Ohio St.3d 1516, 2002-Ohio-4950. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. To demonstrate error, defendant must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense.Id.
 {¶ 46} Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03: "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. State v. Adams, 5th Dist. No. 02-CA-00043, 2002-Ohio-5953 at ¶ 8.
 {¶ 47} "A trial court must consider two questions when a defendant requests specific dates, times, or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense." State v. Hensley (1991),59 Ohio St.3d 136, 141-42, 571 N.E.2d 711,716 (quoting State v.Lawrinson (1990), 49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262).
 {¶ 48} If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not "per se
impermissible or necessarily fatal to a prosecution." State v. Robinette
(Feb. 27, 1987), 5th Dist. No. CA-652. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself. Sellards, supra; State v.Gingell (1982), 7 Ohio App.3d 364, 368, 455 N.E.2d 1066, 1071; Statev. Kinney (1987), 35 Ohio App.3d 84, 519 N.E.2d 1386.
 {¶ 49} Grafted upon the question of prejudice is a problem that cases of child abuse invariably present, i.e., a victim-witness who, due to tender years, does not have the temporal memory of an adult and has problems remembering exact times. As this court has noted: "[t]ime is neither essential nor an element of the crime of sexual battery." Statev. Robinette (Feb. 27, 1987), 5th Dist. No. CA-652.
 {¶ 50} In Robinette this court stated: "[w]e note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. State v.Humfleet (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances."
 {¶ 51} In State v. Sellards (1985), 17 Ohio St.3d 169, 478 N.E.2d 781, the Supreme Court gave two examples of when the failure to provide specific dates and times could be prejudicial to the accused. The court first noted that if the age of the victim were an element of the crime with which the accused had been charged and the victim bordered on the age required to make the conduct criminal, then the failure to provide a more specific time frame would be prejudicial. This is true because "specific dates of sexual conduct might well have become critical to the accused's ability to prepare a defense, since sexual conduct toward one thirteen years of age or older would not constitute the offense of rape as defined in the charged section of the criminal code, R.C. 2907.02(A)(3)." Sellards, supra, 17 Ohio St.3d at 172, 478 N.E.2d at 785. The second situation is where "the defendant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment. Again, under such circumstances, the inability of the state to produce a greater degree of specificity would unquestionably prejudice the defense." Id. The Sellards court noted: "the record in this case does not indicate that the failure to provide the accused with a specific date was a material detriment to the preparation of his defense. In this regard, we note that while appellee claims on appeal that the inexactitude of the indictment and bill of particulars as to date denied him the ability to present an alibi defense, appellee never filed a notice of intent to rely on an alibi as is required by Crim.R. 12.1. (Cf. State v. Dingus [1970], 26 Ohio App.2d 131, 137,269 N.E.2d 923 [55 O.O.2d 280]; Gingell, supra, at 368, 455 N.E.2d 1066.)" Id.
 {¶ 52} In the case at bar, Kimberly's testimony has been unwavering in two respects. First she has consistently alleged that the incidents occurred on three separate occasions. Second, that each incident occurred between December 2003 and February — March, 2004. She testified to these dates during her trial. Appellant was in possession of Detective Penrod's report and had every opportunity to question her regarding the difference in the dates. In reality the only difference is the particular month that each incident occurred. In the instant case, the testimony of Kimberly placed the offenses within the general time frame of the dates specified in the indictment and the bill of particulars. Her trial testimony was consistent with her grand jury testimony.
 {¶ 53} As an allowance for reasonableness and inexactitude is permissible it can hardly be argued that the difference in which particular month during the relevant time frame set forth in the indictment each particular act occurred is "exculpatory" or "favorable" evidence to the accused so as to place a duty upon the State to disclose the information.
 {¶ 54} With respect to the expansion of the time period in Lauren's case, trial counsel tacitly admitted that he knew the indictment contained a typographical error concerning the dates of the offenses. (T. at 1-13). The dates on which the amendment was based were available and provided to appellant in the report of Detective Penrod and the social worker's narratives. A review by this court of Lauren's grand jury testimony and Detective Penrod's report substantiates that the grand jury heard evidence of sexual abuse occurring during the time period as set forth in the amendment. Appellant's defense was that the incidents did not occur at any time. Appellant did not file a notice of alibi for any of the time period set forth in the original indictment. The inexactitude of temporal information did not truly prejudice the appellant's ability fairly to defend himself.
 {¶ 55} Appellant's next contends that Kimberly did not testify that appellant digitally penetrated her during her grand jury testimony. However, Kimberly testified at appellant's trial that she did not tell Detective Penrod that appellant had penetrated her. (T. at 390). She further testified that Detective Penrod's hand demonstration didn't help her at all. (Id. at 383). Accordingly, the jury was aware that Kimberly's testimony differed from Detective Penrod's report. It is equally clear the grand jury based its decision to indict appellant for digitally penetrating Kimberly upon information from witnesses other than Kimberly. The trial court granted appellant's Crim. R. 29 motion and dismissed Count Seven of the indictment relating to the incident of digital penetration.
 {¶ 56} Appellant fails to specify how his cross examination of Kimberly or his defense of the case would have changed had he been provided the grand jury testimony. Appellant fails to articulate how having the grand jury testimony would have added any facts that the jury was not already aware of when assessing Kimberly's credibility.
 {¶ 57} Appellant's assertions concerning the changing of the alleged offensive behavior on Count Four of Kimberly Haller's case is not supported by the record. On May 27, 2004 appellant was indicted by the Delaware County Grand Jury with seven counts relative to Kimberly Haller. Each count was alleged to have occurred "during the period of December 1, 2003 through April 15, 2004." Count Four of that indictment set forth the following ". . . to wit, the said CHRISTOPHER L. BROWN fondled Jane Doe's genital area . . ."
 {¶ 58} The State filed a Bill of Particulars on October 20, 2004 alleging the offensive conduct was the fondling of "Jane Doe's breasts . . ." On November 9, 2004 the State filed a Second Amended Bill of Particulars. With respect to Count Four of the Indictment, the alleged offensive conduct was the "fondling of Jane Doe's genitals . . ."
 {¶ 59} The original indictment placed appellant on notice of the specific allegation. The First Amended Bill of Particulars mirrors the allegations contained in the report of Detective Penrod. The Second Amended Bill of Particulars conforms to Kimberly Haller's trial testimony.
 {¶ 60} In Count Four of the Indictment appellant was charged with Gross Sexual Imposition. R.C. 2907.05, Gross Sexual Imposition prohibits "sexual contact" when the offender knows the other person is less than thirteen years of age. "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person". R.C. 2907.01. Accordingly, touching the "erogenous zone" is what is prohibited. The female breast and genital are both included within this definition. Accordingly, the amendment did not change the name or identity of the crime charged. (See, Crim. R. 7(D)). Court's have permitted similar amendments. See, State v. Hickman, Summit App. No. 20883, 2002-Ohio-3406 [Upholding a pretrial amendment changing the sexual conduct forming the basis of the rape charge from fellatio to cunnilingus]; State v. McGill (Dec. 8, 2000), Greene App. No. 99CA25. [Court upheld the amendment of a bill of particulars to allege the victim was raped by vaginal penetration rather than anal penetration based upon the victim's testimony at trial].
 {¶ 61} Additionally, appellant completely denied having any sexual contact with Kimberly. Appellant has not articulated how his cross examination of Kimberly would have changed or how his defense to the charge would have been different if he had the information that he was accused of fondling her genitilia instead of her breast.
 {¶ 62} Accordingly, the trial court correctly concluded that appellant failed to demonstrate any prejudice from the amendment.
 {¶ 63} Appellant next contends that the Second Amended Bill of Particulars amended the room in the house where the sexual abuse concerning Lauren Haller took place.
 {¶ 64} Appellant fails to explain how his cross-examination of the prosecution's witnesses would have differed had he known he needed to defend against a claim that the sexual abuse took place in a different room inside the residence. Appellant was afforded the opportunity to cross-examine Lauren after she testified as to the location where each incident had occurred. Further, since the testimony of Lauren was provided during the prosecution's case-in-chief, appellant had the opportunity to attempt to rebut that testimony during his case-in-chief.
 {¶ 65} For these reasons, we conclude appellant has failed to demonstrate either that the trial court abused its discretion in amending the indictment and the bill of particulars in either Kimberly or Lauren's case or that the amendments prejudiced his defense. Accordingly, appellant's Third Assignment of Error is overruled.
 {¶ 66} We find appellant did not articulate a particularized need for Kimberly Haller's grand jury testimony which outweighed the need to maintain grand jury secrecy. The evidence concerning the discrepancies in the dates the incidents were alleged to have occurred was not material either to guilt or to punishment. Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 67} In his Second Assignment of Error, appellant contends that the trial court erred in not conducting an in camera review of Lauren and Kimberly's follow-up therapeutic counseling records to determine whether those records contained evidence favorable to the appellant. Appellant further claims he was denied an opportunity to present a defense because the trial court did not allow him access to an audio tape interview of Lauren Haller. Appellant contends that the information was necessary for his expert witness to reach a conclusion on the issue of suggestibility of the child, or "taint" in the interview process. We disagree.
 {¶ 68} Under certain circumstances, a defendant is entitled to have confidential records reviewed in camera by the trial court. Pennsylvaniav. Ritchie (1987), 480 U.S. 39, 58. In Ritchie, the United States Supreme Court dealt with the issue of a defendant's right to discover statements made by a minor victim to a children services agency. The Ritchie court held that the children services agency was obligated to turn the records over to the trial court for in camera review to determine the materiality of such records. Id. However, the Ritchie court also held that a defendant may not require the trial court to search through confidential records "without first establishing a basis for his claim that it contains material evidence." Id. at 58, fn. 15. The Ritchie court, quoting United States v. Valenzuela-Bernal (1982), 458 U.S. 858, 867, held that a defendant "must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."
 {¶ 69} In State v. Allan (Feb. 2, 1996), 6th Dist. No. L-94-272, the Court noted that "[t]here exists little Ohio case law which discusses the initial showing a defendant must make before he is entitled to an incamera review of confidential records by the trial court. However, this issue has been decided in several other states. In People v. Stanaway
(1994), 446 Mich. 643, 670-677, the Michigan Supreme Court provides a synopsis of the approaches taken by several different states in determining what a defendant must initially show in order to obtain an incamera review of confidential records. In general, these states have held there must be some showing that the records do, in fact, contain the alleged information and there must be some showing that the information is relevant to the defense. The Stanaway court concluded that a defendant would be entitled to such in camera inspection if he or she "has a good faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." Id. at 677. In Washington v.Kalakosky (1993), 121 Wash.2d 525, 550, the Washington Supreme Court held that a defendant "must make a particularized showing that [confidential] records are likely to contain material relevant to the defense" prior to requiring the court to conduct an in camera inspection".
 {¶ 70} The Court in Allan, supra, held "that a defendant is entitled to the trial court's in camera inspection of children services agency records where the defendant shows that there is a reasonable probability, grounded on some demonstrable fact, that the records contain material relevant to the defense".
 {¶ 71} In the case at bar, appellant sought follow-up therapeutic counseling records of both Lauren and Kimberly. Notably, appellant did not request the trial court conduct an in camera inspection of the records.
 {¶ 72} The appellant has not cited any statute which requires these records to be disclosed. Accordingly, we agree with the court in Allan,
supra, that before the appellant is entitled to have the trial court conduct an in camera inspection of the counseling records, he is required to demonstrate that there is a reasonable probability, grounded on some demonstrable fact, that the records contain material relevant to the defense. Appellant has failed in this burden. Accordingly, the trial court correctly refused appellant's request for a release of the counseling records. Further, the trial court was under no duty to conduct an in camera inspection of the records prior to overruling appellant's motion to compel.
 {¶ 73} Appellant next contends that the trial court erred in not requiring the State to produce the audio tape of the initial interview of Lauren Haller.
 {¶ 74} The trial court ruled that the information was not subject to disclosure because it was a "witness statement" pursuant to Crim. R. 16(B) (3). (Judgment Entry Granting Motion to Reconsider Order Granting Motion to Compel Filed August 11, 2004, filed Aug. 24, 2004). However, the trial court did allow appellant to provide Dr. Smalldon with the questions the interviewer asked Lauren; Lauren's answers were redacted. (T. at 532). In addition the record discloses that the audio tape was made available to Dr. Smalldon on Sunday, November 7, 2004. (Id. at 505). Dr. Smalldon did not testify until Tuesday, November 9, 2004). (Id. at 503). Dr. Smalldon offered no reason as to why he was unable to review the audio tape prior to testifying. Appellant did not request a continuance to allow Dr. Smalldon additional time to review the tape.
 {¶ 75} Crim. R. 16 provides in relevant part:
 {¶ 76} "(B) Disclosure of evidence by the prosecuting attorney
 {¶ 77} "* * *
 {¶ 78} "(2) Information not subject to disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the "discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."
 {¶ 79} Accordingly, the tape recorded interview of Lauren was not subject to disclosure. We would note that any error in failing to provide the audio tape is harmless beyond a reasonable doubt. In addition we note that the tape was in fact made available to appellant's trial counsel prior to the time that Dr. Smalldon testified.
 {¶ 80} Dr. Smalldon testified as to what, in his opinion, is the proper standard for interviewing a child sexual abuse victim. (T. at 507-514; 562-571). Dr. Smalldon reviewed the police reports, Children's Services records, as well as the redacted interview with Lauren. (Id. at 505; 561). Dr. Smalldon highlighted his concerns to the jury with the interview process based upon the questions the examiner had asked Lauren during the tape-recorded interview. (Id. at 573-575). Dr. Smalldon found the interviewing process of Lauren Haller to be flawed or "tainted." (Id. at 575-76). Dr. Smalldon further testified that "I wouldn't say that there is a single, accepted protocol." (T. at 507; 532). However, Dr. Smalldon further testified that the fact that the protocol was tainted does not necessarily mean that the allegations were fabricated. (Id. at 537-38).
 {¶ 81} Appellant contends that the answers Lauren gave to the interviewer would have strengthened Dr. Smalldon's opinion concerning the flawed or tainted interview process. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. United States v. Agurs (1976), 427 U.S. 97,109-110, 96 S.Ct. 2393, 2400. The jury heard appellant's experts assail the interview process and discuss the suggestibility of children concerning sexual abuse. Accordingly, appellant was not denied an opportunity to present his defense.
 {¶ 82} Appellant's Second Assignment of Error is overruled.
 IV. {¶ 83} In his Fourth Assignment of Error, appellant contends that the trial court erred by not granting his motion to continue the trial after the Court granted the State's motions to amend the Indictment and Bill of Particulars. We disagree.
 {¶ 84} A reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. Ungar v. Sarafite
(1964), 376 U.S. 575,589, 84 S. Ct. 841.
 {¶ 85} Crim R. 7 concerning the amendment of an indictment states, in relevant part: "no appeal based upon such action of the court [denying a motion for a continuance] shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted". Crim. R. 7 also provides that a defendant is not entitled to a continuance based upon the amendment of the charges if "it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made . . ."
 {¶ 86} In light of our finding that the appellant has not been misled or prejudiced by the defect or variance in respect to which the amendments were made, the trial court correctly overruled appellant's motion for a continuance of the trial date. We find from consideration of the whole proceedings that no failure of justice resulted from the denial of appellant's motion for a continuance.
 {¶ 87} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 88} In his Fifth Assignment of Error, appellant maintains that the trial court erred in consolidating Kimberly Haller and Lauren Haller's cases. We disagree.
 {¶ 89} Appellant was charged with twenty-four felony sexual crimes against two different children, both of whom were family members. Not only were there two different victims, but the times of the offenses were consecutive and did not overlap. The incidents with Lauren Haller occurred from June 1, 2001 to September 1, 2003. The incidents involving Kimberly Haller occurred From December 1, 2003 to April 15, 2004.
 {¶ 90} Crim. R. 13 states: "The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information".
 {¶ 91} Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense.State v. Czajka (1995), 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9. Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials. Crim.R. 14.
 {¶ 92} Prejudice is not demonstrated if evidence of one offense would have been admissible as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct. Lott,51 Ohio St.3d at 163, 555 N.E.2d 293. As long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of "other acts" evidence if it is "related to and share[s] common features with the crime in question." State v. Lowe (1994), 69 Ohio St.3d 527, 634 N.E.2d 616, paragraph one of the syllabus. In particular, evidence of other crimes, wrongs or acts is admissible under this rule if the evidence shows "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other crimes, wrongs or acts is inadmissible merely to show that an accused has the propensity to commit crime. Evid.R. 404(B).
 {¶ 93} When a defendant claims that he or she was prejudiced by the joinder of multiple offenses, the court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct. State v. Schaim (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, citing State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476
and Drew v. United States (C.A.D.C., 1964), 331 F.2d 85. "If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." Id., citing Drew v.United States, 331 F.2d at 90 and United States v. Riley (C.A.8, 1986),530 F.2d 767. Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed as requested by appellant.
 {¶ 94} In discussing the dangers associated with admitting other acts evidence in a case where the offenses included several counts of rape and gross sexual imposition, the Schaim court stated:
 {¶ 95} "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. * * * This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The forcible rape statute and the gross sexual imposition statute both contain subsections that address the admissibility of evidence of other sexual activity by either the victim or the defendant. * * * The legislature has further provided that a court shall resolve the admissibility of other evidence of sexual activity in chambers `at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.' "(Citations omitted.) Id. at 59-60, 600 N.E.2d 661.
 {¶ 96} From our review of the evidence, the trial court ruled the acts against the two family members were admissible under R.C. 2945.59 and Evid.R. 404. We find this because: 1) the acts were against family members which began when the children were approximately similar ages, 2) the acts occurred when the children stayed overnight at a residence where appellant's was present and 3) all the acts occurred when the children were sleeping. State v. Ickes (June 13, 2000), 5th Dist. No. 1999AP080052. These facts clearly indicate a "scheme, plan or system" negating any claim of accident. Id. Further, the acts were consecutive in nature, beginning with Lauren and following through to Kimberly. Each victim testified separately. Id. The issues were clearly laid out for the jury, and the jury was instructed that each count and victim should be considered from its own evidence.
 {¶ 97} Assuming, arguendo, that the evidence did not fit the "other acts" exception, it nevertheless fits the second prong of the Schaim test which requires the evidence of the crime under each indictment to be simple and distinct. 65 Ohio St.3d at 59. In State v. Decker (1993),88 Ohio App.3d 544, the court found that the evidence was simple and distinct. The evidence achieved these characteristics in part because the crimes involved contained different victims and different witnesses, and therefore, the jury was able to segregate the facts which constituted each crime. Decker, 88 Ohio App.3d at 549.
 {¶ 98} In this case, the prosecution introduced evidence of each distinct crime. Both Lauren and Kimberly testified at length and in specific detail about how the abuse occurred, when it began, and how long it continued. Thus, as in Decker, the evidence was simple and distinct because the facts surrounding each crime were capable of segregation.
 {¶ 99} Accordingly, because appellant was not able to demonstrate that he was prejudiced by the joinder of claims, he cannot meet the first element of the Schaim test. Therefore we do not need to address the remaining elements of the test.
 {¶ 100} Given the facts sub judice, we find the trial court did not err in denying the severance motion.
 {¶ 101} Appellant's Fifth Assignment of Error is denied.
 VI. {¶ 102} In his Sixth Assignment of Error appellant claims he was denied effective assistance of trial counsel. We disagree.
 {¶ 103} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 104} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 105} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 106} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 107} Appellant first claims that counsel was ineffective in failing to interview the two complaining witnesses before trial. Appellant does not articulate how questioning the witnesses prior to trial would have resulted in a different outcome or trial strategy.
 {¶ 108} Upon our review of the record, trial counsel thoroughly cross-examined Lauren (T. at 198-231; 245-47) and Kimberly (T. 386-96). Counsel presented an expert witness and five (5) lay witnesses on appellant's behalf. (T. at 550; 606; 636; 642; 645). Appellant testified on his own behalf. (Id. at 714).
 {¶ 109} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690,104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelman v.Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 110} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v.Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 111} Appellant has further failed to demonstrate that there exists a reasonable probability that, had counsel interviewed Lauren and Kimberly prior to trial, the result of the trial would have been different.
 {¶ 112} Appellant's second contention is that trial counsel was ineffective because he did not file a motion to dismiss the indictments. Appellant contends that because his expert witness testified that the interview with Lauren Haller was flawed or tainted the indictment could have been dismissed.
 {¶ 113} A review of the record indicates that counsel decision not to seek a pre-trial taint or suggestibility hearing was the result of a tactical decision. In response to defense counsel's suggestion concerning the testimony of appellant's expert witness, the prosecuting attorney noted that if the appellant was going to request a suggestibility hearing, the State "will pull in our own expert . . . I do need to talk to Julie Brahms and see when she's available because she's who we usually use . . ." (T., Aug. 9, 2004 at 20; 22).
 {¶ 114} In addition, the trial court was not obligated to dismiss the indictments because appellant's expert testified that the interviewer did not utilize the proper protocol in questioning the victims. Dr. Smalldon testified that "I wouldn't say that there is a single, accepted protocol." (T. at 507; 532). Dr. Smalldon further testified that the fact that the protocol was tainted does not necessarily mean that the allegations were fabricated. (Id. at 537-38).
 {¶ 115} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v.Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 116} Appellant has further failed to demonstrate that there exists a reasonable probability that, had counsel filed a motion to dismiss the indictments prior to trial, the result of his case would have been different.
 {¶ 117} Appellant next contends that trial counsel was ineffective in failing to object to hearsay evidence from the State's witness. Appellant fails to set forth the precise statements he claims trial counsel was ineffective in failing to object to; nor does appellant articulate how the statements prejudiced his case.
 {¶ 118} Appellant's trial counsel did note a continuing line of objection based upon Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, 158 L.Ed.2d 177 to any statements made to the mother of the victim as well as any other witness. (T. at 58). The trial court overruled trial counsel's motion to prohibit such testimony. (Id. at 60-61). Appellant has not argued nor assigned as error in his appeal the trial courts overruling of defense counsel's motion to exclude the testimony.
 {¶ 119} As trial counsel did object and attempt to have the testimony declared inadmissible, appellant's argument that counsel was ineffective in failing to object to the testimony is misplaced.
 {¶ 120} Even if admission of the statements could be considered erroneous, we would conclude, from a review of the entire record, that such error would be `harmless beyond a reasonable doubt.' Chapman v.California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harringtonv. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284;Schneble v. Florida (1972), 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340.
 {¶ 121} Appellant next contends that trial counsel was ineffective in failing to renew his request for a copy of the grand jury transcripts of the victims, and in failing to cross-examine Kimberly Haller concerning the difference in dates between her statement to Detective Penrod and her trial testimony.
 {¶ 122} In light of our disposition of Appellant's First and Third Assignments of Error, supra, Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel renewed the motion to disclose the grand jury testimony and cross-examined Kimberly Haller concerning the discrepancy in the dates on which the incidents occurred, the result of his case would have been different.
 {¶ 123} In his final contention, appellant claims he was rendered ineffective assistance of counsel because trial counsel presented the testimony of Clyde Haller, the father of Lauren Haller and grandfather of Kimberly Haller. He claims that the witness admitted many damaging facts to appellant's case. (T. at 610-11; 620; 622; 626; 629).
 {¶ 124} An attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., State v. Coulter (1992),75 Ohio App.3d 219. This Court will not second-guess every aspect of the defense attorney's presentation of the case.
 {¶ 125} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690,104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelman v.Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 126} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v.Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 127} Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel not called Clyde Haller as a witness, the result of his trial would have been different.
 {¶ 128} Accordingly, Appellants Sixth Assignment of Error is overruled.
 {¶ 129} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed. Costs to appellant.